NATHAN F. SMITH, #264635
MALCOLM ♦ CISNEROS, A Law Corporation
2112 Business Center Drive
Irvine, California 92612
Telephone: (949) 252-9400
Facsimile: (949) 252-1032
Email: nathan@mclaw.org

*Attorneys for FinWise Bank*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| FINWISE BANK, a Utah Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ENERCORP, LLC, a Texas limited liability corporation, and ZACHRY WEIR, an individual,<br><br>Defendants. | Case No.<br><br><br>**COMPLAINT** |

Plaintiff, FinWise Bank ("FinWise") complains and alleges as follows:

## PARTIES

1. FinWise is now, and was at all times mentioned herein, a corporation, duly organized under the laws of the State of Utah, with its principal place of business located at 756 Winchester, 1st Floor, Murray, Utah 84107.

2. Defendant Enercorp Services, LLC is, and at all relevant times mentioned herein was, a limited liability corporation organized under the laws of the State of Texas,

with its principal place of business located at 10850 Luna Road, Dallas, Texas 75220 ("Enercorp")

3.     Defendant Zachry Weir is, and at all relevant times mentioned herein was, an individual residing in Plano, Texas at 2504 Suntree Lane, Plano, Texas 75204.  10721 Luna Road, Dallas, Texas 75220 is an alternate address for Zachry Weir ("Weir").

## JURISDICTION AND VENUE

4.     This Court is vested with jurisdiction pursuant to 28 U.S.C. § 1332 because: (a) FinWise is a Utah corporation with its principal place of business in Utah; (b) Enercorp is a Texas limited liability corporation with its principal place of business in Texas; (c) Weir is a Texas resident; and (d) the amount in controversy herein exceeds $75,000, exclusive of costs and interest.

5.     Venue is proper in the Central District of California, Santa Ana Division, pursuant to 28 U.S.C. § 1391(a) because this action arises out of events occurring within the Central District of California, specifically a contract executed and entered into in Irvine, California.

## GENERAL ALLEGATIONS

6.     On or about April 26, 2018, Enercorp and Celtic Commercial Finance, a division of MB Equipment Finance, LLC ("Celtic") entered into a Master Lease whereby Celtic leased certain equipment ("Equipment") to Enercorp ("Lease").  A true and correct copy of the Lease is attached hereto as Exhibit "A."

7.     The Equipment leased by Enercorp is described with particularity in Lease Schedule No. 3879A01, which is attached to the Lease.

8.     Pursuant to the Lease, Enercorp was required to tender 60 monthly payments, in the amount of $9,500, to Celtic, commencing on June 8, 2018.

9.     On or about June 11, 2018, Enercorp and Celtic entered into a Letter Agreement, whereby the terms of the Lease were amended ("Letter Agreement").  A true and correct copy of the Letter Agreement is attached hereto as Exhibit "B."

10.    Pursuant to the Letter Agreement, the "Equipment Cost to Lessor Not to

Exceed," which was stated as "$500,000.00" in the Lease, was increased to "$527,125.00," and the "Monthly Rent," which was stated in the Lease as "$9,500.00" was increased to "$10,089.00."

11.     On or about April 26, 2018, as an inducement to Celtic to enter into the Lease, Weir executed and delivered to Celtic, a Guaranty, whereby he agreed to unconditionally guarantee Enercorp's obligations under the Lease ("Guaranty"). A true and correct copy of the Guaranty is attached hereto as Exhibit "C."

12.     On June 28, 2018, Celtic assigned all its rights under the Lease and Guaranty to FinWise via an Assignment of Lease Receivable ("Assignment of Lease"). A true and correct copy of the Assignment of Lease is attached hereto as Exhibit "D."

13.     Pursuant to the Assignment of Lease executed by Celtic, FinWise is the successor-in-interest to Celtic under the Lease, entitled to payment under the Lease, and entitled to enforce the Lease.

14.     Pursuant to the Assignment of Lease executed by Celtic, FinWise is the successor-in-interest to Celtic under the Guaranty, entitled to payment under the Guaranty, and entitled to enforce the Guaranty.

15.     Enercorp defaulted on its obligations under the Lease by failing to pay the amounts due and owing thereunder when those amounts became due.

16.     Specifically, Enercorp failed to pay the August 1, 2019 monthly payment and has failed to pay any further payments due under the Lease.

17.     As a result of Enercorp's defaults, and in accordance with the Lease, FinWise exercised its right to declare the following amounts immediately due and payable: (a) All amounts due under the Lease; (b) the remaining Lease payments for the balance of the Lease term; and (c) the fair market value of the Equipment.

18.     On October 16, 2019, FinWise demanded that Enercorp pay all accelerated amounts up to FinWise under the Lease ("Demand Letter"). A true and correct copy of the Demand Letter is attached hereto as Exhibit "E."

///

19.    As of October 16, 2019, the amounts due and owing to FinWise under the Lease totaled approximately $924,979.

20.    Despite FinWise's demands, Enercorp has failed to pay the amounts demanded by FinWise and due under the Lease and has further failed to return the Equipment to Finwise.

21.    Pursuant to the Lease, Enercorp is obligated to pay all costs, including reasonable attorney fees incurred by FinWise in enforcing the Lease.

22.    FinWise has performed and continues to perform all the terms, conditions, and covenants required of FinWise under the Lease.

23.    As a proximate result of Enercorp's default on its obligations under the Lease, FinWise has been damaged in the amount of no less than $924,979, through October 16, 2019, plus reasonable attorney fees and costs incurred and to be incurred by Finwise in connection with its enforcement of its remedies under the Lease, plus additional late charges accruing under the Lease, plus other costs and advances.

24.    Upon Enercorp's default under the Lease, the Guaranty allows FinWise to proceed against Weir for the amounts due under the Lease and Guaranty.

25.    Through the Demand Letter, FinWise demanded that Weir pay all amounts due FinWise under the Lease and the Guaranty.

26.    Despite FinWise's demands, Weir has failed to pay the amounts due and owing to FinWise under the Lease and the Guaranty.

27.    All conditions precedent for the maintenance of this action on the Lease have been performed, satisfied, or waived.

28.    All conditions precedent for the maintenance of this action on the Guaranty have been performed, satisfied, or waived.

29.    As a result of Enercorp's default on its obligations to Finwise under the Lease, and pursuant to the Guaranty, Enercorp and Weir are liable to FinWise, jointly and severally, for 100% of all amounts due under the Lease and the Guaranty.

///

## COUNT I

### (Breach of Lease Against Enercorp)

30.    FinWise repeats and realleges the allegations contained in paragraphs 1 through 29, *supra*, as though fully set forth herein.

31.    The Lease is a valid and binding contract.

32.    Enercorp has failed to make several payments when due under the Lease and is currently in default thereunder.

33.    As of the date of this Complaint, Enercorp remains in default of its obligations to FinWise under the Lease and is now indebted to Finwise on account of its default under the Lease in an amount of not less than $924,979, through October 16, 2019, plus reasonable attorney fees and costs incurred and to be incurred by Finwise in connection with its enforcement of its remedies under the Lease, plus additional late charges accruing under the Lease, plus other costs and advances made after October 16, 2019, together with interest thereon, including but not limited to prejudgment interest.

WHEREFORE, FinWise seeks judgment against Enercorp in an amount of not less than $924,979, in addition to reasonable attorney fees and costs incurred and to be incurred by Finwise in connection with its enforcement of its remedies under the Lease, plus additional late charges accruing under the Lease, plus other costs and advances made after October 16, 2019 through the date of judgment, plus post-judgment interest at the legal rate, any other amounts due FinWise under the Lease, and such other and further relief as the Court deems appropriate.

## COUNT II

### (Breach of Guaranty Against Weir)

34.    FinWise repeats and realleges the allegations contained in paragraphs 1 through 33, *supra*, as though fully set forth herein.

35.    The Guaranty is a valid and binding contract.

36.    Despite FinWise's demands, Weir has refused and continues to refuse to pay amounts owing to FinWise pursuant to the Lease and Guaranty.

37.     FinWise is entitled to a judgment in its favor against Weir for all amounts due under the Lease and Guaranty in addition to FinWise's reasonable costs and attorney fees incurred in connection with its enforcement of the Lease and the Guaranty, together with interest thereon.

WHEREFORE, FinWise seeks judgment against Weir in an amount of not less than $924,979, in addition to reasonable attorney fees and costs incurred and to be incurred by Finwise in connection with its enforcement of its remedies under the Lease and Guaranty, plus additional late charges accruing under the Lease and Guaranty, plus other costs and advances made after October 16, 2019 through the date of judgment, plus post-judgment interest at the legal rate, any other amounts due FinWise under the Lease and Guaranty, and such other and further relief as the Court deems appropriate.

## COUNT III

### (Claim and Delivery for Equipment Against Enercorp)

38.     FinWise repeats and realleges the allegations contained in paragraphs 1 through 37, *supra*, as though fully set forth herein.

39.     Under the terms of the Lease, ownership of the Equipment is to remain with FinWise, provided that as long as Enercorp makes timely payments under the Lease, Enercorp may retain possession of the Equipment.

40.     The Lease further provides that upon an event of default, Enercorp must return the Equipment to FinWise so that FinWise can dispose of the Equipment in accordance with the Lease and apply any net disposal proceeds to the amounts due to FinWise under the Lease.

41.     In the event that the Lease is deemed to be a lease intended as security, FinWise has a perfected security interest in the Equipment by virtue of the terms of the Lease and the financing statements on file with the Texas Secretary of State ("Financing Statements").  True and correct copies of the Financing Statements are attached hereto as Exhibit "F."

42.     The Equipment is currently in the possession of Enercorp.

43.     Enercorp has failed to return the Equipment to FinWise in violation of the Lease.

44.     Upon information and believe, Enercorp has withheld possession of the Equipment from FinWise so that Enercorp can profit from the Equipment, use the Equipment, and possess the Equipment without paying the amounts due to FinWise under the Lease, all at FinWise's risk and expense.

45.     This Complaint, in addition to all previous demands made by FinWise to Enercorp, shall constitute demand that Enercorp immediately surrender possession of the Equipment to FinWise.

46.     Upon information and belief, the Equipment is currently in the possession of Enercorp at 10850 Luna Road, Dallas, Texas 75220 ("Premises").  This belief is based upon the fact that the Premises are designated as the location of the Equipment under the Lease.

47.     Upon information and belief, the Equipment has not been taken for a tax, assessment, or fine, pursuant to a statute, or seized under an execution against the property of FinWise.

48.     FinWise estimates that the gross fair market value of the Equipment, sight unseen, and based upon the age of the Equipment, the original purchase price (or amount financed), and the state of the technology of the Equipment is $460,000.  The Equipment continues to depreciate daily, and its value may be substantially less depending on many factors, including its actual condition and whether the Equipment is sold in a forced liquidation scenario.

49.     The Equipment may be easily destroyed and damaged, and its parts may be readily moved and/or sold.  Further, Enercorp's continued use of the Equipment will cause its value to depreciate and threatens to render valueless FinWise's interest in the Equipment.

WHEREFORE, FinWise seeks a judgment against Enercorp for immediate and permanent possession of the Equipment so that FinWise may dispose of the Equipment in

accordance with the Lease and for such other and further relief as the Court deems just and proper.

DATED:  October 31, 2019                    Respectfully Submitted,

MALCOLM ♦ CISNEROS, A Law Corporation

By:  /s/ *Nathan F. Smith*
     NATHAN F. SMITH
     *Attorneys for FinWise Bank*

**EXHIBIT A**





**MASTER LEASE** Number [CML-3879A]
**Celtic Commercial Finance.**
a division of MB Equipment Finance, LLC — Lessor
4 Park Plaza, Suite 300, Irvine, CA 92614
866.323.5842 · 949.263.3880 · Fax: 949.263.1331

Lessee: **Enercorp Services LLC**

Address: 10850 Luna Road, Dallas, TX 75220

This is a **MASTER LEASE AGREEMENT** (herein called "Lease"). Lessor hereby agrees to lease to Lessee, and Lessee hereby agrees to lease from Lessor, the items of tangible and/or intangible property (collectively called "Equipment" and individually called "Item") described on any Lease Schedule(s) ("Schedule") now or in the future annexed hereto and made a part hereof, subject to the terms and conditions set forth herein. Each Schedule annexed hereto incorporates the terms of this Lease and is independent and enforceable as a separate transaction.

**1. QUIET ENJOYMENT:** So long as Lessee is not in default hereunder, Lessor shall not disturb Lessee's quiet enjoyment of the Equipment, subject to the terms and conditions of this Lease.

**2. NO WARRANTIES AND UNIFORM COMMERCIAL CODE ACKNOWLEDGMENT:** Lessee acknowledges that Lessor is not the manufacturer, vendor, developer, distributor, publisher or licensor (for purposes of this Lease, all of which are called "Manufacturer", both collectively and individually) of the Equipment. Lessee further acknowledges and agrees that **LESSOR MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR ANY PURPOSE, CONDITION, DESIGN, CAPACITY, SUITABILITY OR PERFORMANCE OF ANY OF THE EQUIPMENT, OR ANY OTHER REPRESENTATION OR WARRANTY WITH RESPECT THERETO, IT BEING AGREED THAT THE EQUIPMENT IS LEASED "AS IS".** LESSEE FURTHER REPRESENTS THAT ALL ITEMS OF EQUIPMENT ARE OF A SIZE, DESIGN AND CAPACITY SELECTED BY IT, AND THAT IT IS SATISFIED THE SAME IS SUITABLE FOR LESSEE'S PURPOSES. Lessor assigns to Lessee any and all Manufacturer warranties, to the extent assignable, for the term of the Lease. Lessor shall have no liability to Lessee or anyone claiming through Lessee for the breach of any such warranty or for any claim, loss, damage or expense of any kind or nature resulting, directly or indirectly, from the delivery, installation, use, operation, performance, or lack or inadequacy thereof, of any Items of Equipment. This Lease is a "Finance Lease" as defined in, and for the purpose only of Division 10 of the California Commercial Code and not necessarily for any accounting purpose or otherwise. Lessee acknowledges that Lessor has informed or advised Lessee, either previously or by this Lease, of the following: (i) the identity of the "Supplier", (ii) that Lessee may have rights under the "Supply Contract", and (iii) that Lessee may contact the Supplier for a description of any such rights. (The terms "Finance Lease", "Supplier" and "Supply Contract" as used herein have the meanings ascribed to them under Division 10 of the California Commercial Code.)

**3. TERM:** The "Commencement Date" for each Item shall be the day that the Item has been delivered to and is usable by Lessee as evidenced by an Acceptance Certificate duly executed by Lessee or, in the absence thereof, the Manufacturer's delivery certification. The "Base Term" as indicated on any Schedule shall be the period beginning on the first day of the calendar month following the *final* Commencement Date ("Final Commencement Date") of the Schedule or, if the Final Commencement Date falls on the first day of a calendar month, then that day, and continuing for the number of months specified on the Schedule. This Lease with respect to any Schedule may be terminated as of the last day of the Base Term by either party giving the other party at least six months but not more than twelve months prior written notice of such termination. Otherwise, the "Term" (as defined below) with respect to any Schedule shall automatically be extended in successive one year intervals ["Extension Term(s)"] at the rental amount in effect as of the last billing cycle of the Base Term. Any such Schedule may be terminated as of the last day of any Extension Term by either party giving the other party at least six months, but not more than twelve months, prior written notice of such termination. Any termination notice given by Lessee shall stipulate whether Lessee chooses to purchase the Equipment or renew the Lease as provided in Section 6. Fair Market Value Purchase Option / Renewal Option, or return the Equipment as provided in Section 7. Return of Equipment. The "Term" of each individual Schedule is hereby defined as the period beginning on the first Commencement Date that occurs with respect to all Items subject to the Schedule and continuing through the Base Term and all Extension Terms, if any. Each Schedule now or in the future annexed hereto shall be deemed to incorporate therein these specific terms and conditions and shall have an independent Term.

**4. RENT:** The monthly rent as shown on each Schedule shall be due and payable by Lessee in the amount of the monthly rent multiplied by the number of months in the billing cycle indicated on the respective Schedule (one month in a monthly billing cycle, three in a quarterly cycle, six in a biannual cycle, etc.) on the first day of the Base Term and on the first day of each billing cycle thereafter, for the remainder of the Term. For Items having a Commencement Date prior to the first day of the Base Term, rent shall be due on a pro rata basis only in the amount of one-thirtieth of the Item's proportional monthly rent for each day from the Item's Commencement Date until, but not including, the first day of the Base Term and shall be payable by Lessee five days after receipt of invoice from Lessor. If any rental or other amounts payable hereunder are not

Celtic Commercial Finance (CMLN 05-03)                                    Lessee Initial _____ Lessor Initials _____



paid within five days of their due date then Lessee shall pay to Lessor upon demand "Delinquency Charges" which shall equal interest compounded monthly at the rate of eighteen percent per annum (or the highest rate allowable by law whichever is less) on the delinquent balance from the date due until the date paid, plus a monthly administrative fee of five percent of the cumulative delinquent balance to offset Lessor's collection and accounting costs. Any deposit paid by Lessee to Lessor shall be refundable if the Schedule is not accepted by Lessor. **THIS IS A NET LEASE AND LESSEE'S OBLIGATION TO PAY ALL RENTAL CHARGES AND OTHER AMOUNTS DUE HEREUNDER SHALL BE ABSOLUTE AND UNCONDITIONAL UNDER ALL CIRCUMSTANCES AND SHALL NOT BE SUBJECT TO ANY ABATEMENT, DEFENSE, COUNTERCLAIM, SETOFF, RECOUPMENT OR REDUCTION FOR ANY REASON WHATSOEVER EXCEPT AS OTHERWISE PROVIDED HEREIN, IT BEING THE EXPRESS INTENT OF LESSOR AND LESSEE THAT ALL RENTAL AND OTHER AMOUNTS PAYABLE BY LESSEE HEREUNDER SHALL BE AND CONTINUE TO BE PAYABLE IN ALL EVENTS. LESSEE HEREBY WAIVES ALL RIGHTS IT MAY HAVE TO REJECT OR CANCEL THIS LEASE, TO REVOKE ACCEPTANCE OF ANY OF THE EQUIPMENT, AND/OR TO GRANT A SECURITY INTEREST IN ANY OF THE EQUIPMENT FOR ANY REASON EXCEPT AS REQUIRED HEREIN.**
**5. USE, MAINTENANCE AND LOCATION:** Lessee at its own expense shall properly use the Equipment, keep the Equipment in good working order, repair and condition, comply with all Manufacturer's instructions as to use and operation, and comply with all applicable laws, rules, regulations or orders of any governmental agency with respect to the use, operation, maintenance, care, storage, or location of the Equipment. During the Term, Lessee shall keep in force the best standard maintenance agreement with the Manufacturer, or such other qualified party including qualified self-maintenance by Lessee, as is reasonably acceptable to Lessor, that will ensure: the Equipment is maintained to all current engineering specifications; all repairs, adjustments and replacements are properly made; and all upgrades, enhancements and changes that are available from time to time from the Manufacturer are made to the Equipment. Lessee shall not relocate the Equipment without Lessor's prior written consent. Lessee shall pay all costs associated with the delivery, installation, use, relocation, and Lessor's inspection of the Equipment. If Lessor requests, Lessee shall affix in a prominent place labels or tags to the Equipment stating that the Equipment is owned by Lessor. Lessee shall permit Lessor to inspect the Equipment from time to time as reasonably determined by Lessor.
**6. FAIR MARKET VALUE PURCHASE OPTION / RENEWAL OPTION:** Lessee may purchase, or renew this Lease for, all but not less than all of the Equipment subject to any Schedule, provided Lessee is not in default and upon proper written notification to Lessor, as of the expiration of the Term of said Schedule. In the event Lessee notifies Lessor it elects to purchase the Equipment, the purchase price shall be the "Fair Market Value" of the Equipment. For the purpose of this Lease, "Fair Market Value" is defined as the total cost(s) it would take to replace the Equipment on an in-place, installed basis, including all current cost(s) and expense(s) for the purchase, assembly, installation, delivery, freight, consulting, training, site preparation and any other services that would be required to render such Equipment fully installed, ready and acceptable for use by an end user as of the termination of the Term. If Lessor and Lessee can not agree on a purchase price then the purchase price shall be determined by the average of two Senior Appraisers accredited by the American Society of Appraisers, one chosen by Lessor and one by Lessee, both using the definition of Fair Market Value hereunder in determining their purchase price, the cost of which shall be borne by Lessee. In the event Lessee notifies Lessor it elects to renew, the renewal shall be based upon the Fair Market Value of the Equipment, the then prevailing market conditions, Lessee's credit worthiness and such other terms and conditions to be mutually agreed upon by Lessee and Lessor. If Lessee has properly elected to purchase or renew any given Schedule, but neither a Fair Market Value purchase price nor the terms and conditions of a renewal have been determined at least thirty days prior to the expiration of the Term, then the Term of the Schedule shall continue on a month to month basis at the rental that was in effect at the end of the Base Term, until such time that either a Fair Market Value purchase price or the terms and conditions of a renewal have been determined.
**7. RETURN OF EQUIPMENT:** If the Equipment is to be returned upon termination of the Term with respect to any Schedule or if for any other reason, Lessee shall immediately discontinue all use of the Equipment and at its own cost, de-install, pack and ship the Equipment to a location(s) within the United States, all in accordance with instructions provided by Lessor. In the case of Equipment which is software, Lessee will also certify in a written form acceptable to Lessor that: (i) all tangible software has been delivered to Lessor; (ii) all tangible records and intangible software have been destroyed; (iii) Lessee has not retained the software in any form; (iv) Lessee will not use the software after termination; and (v) Lessee has not received from Manufacturer anything of value relating to or in exchange for Lessee's use, rental, or possession of the software during the duration of the Lease (including a trade-in, substitution or upgrade allowance). Upon return of the Equipment, Lessee shall take all actions necessary to ensure that the Equipment will be eligible for the best standard Manufacturer Maintenance Contract and shall pay all fees, charges and expenses for maintenance certification or recertification by the Manufacturer and for all costs for repair or replacement of damaged Equipment. Until Lessee has complied with all of the requirements of this Section, rent payment obligations will continue on a month to month basis at the monthly rent delineated on the Schedule. Lessee shall allow Lessor to inspect, at Lessee's cost, all of Lessee's locations to ensure compliance hereunder.
**8. TITLE; PERSONAL PROPERTY:** Except as otherwise provided in this Lease or any Schedule, title to the Equipment shall remain in Lessor. Lessee shall at all times keep the Equipment free and clear of all liens, claims, levies, and legal processes, and shall at its expense protect and defend Lessor's title and/or license rights in the Equipment. In the event any of the Equipment is software governed by a software license, Lessee shall keep said license current for the entire Term and, to

Lessee Initial _____    Lessor Initials _____

the extent the license allows title to the software to pass to licensee, such title shall vest and remain in Lessor. Lessee acknowledges that the license to use the software is being provided by the Manufacturer solely because of payments made by Lessor and in consideration therefor Lessor has obtained Lessee's interest in the License. Lessee forgoes any future claim to the software, including any right to purchase and/or use the software beyond the Term, except as otherwise provided in this Lease. Lessee hereby agrees and does hereby appoint Lessor or its assigns its true and lawful attorney-in-fact to prepare UCC's or other instruments necessary, and authorizes Lessor to cause this Lease or other instruments in Lessor's determination, to be filed or recorded at Lessee's expense in order to protect Lessor's interest in the Equipment, and grants Lessor the right to execute and deliver such instruments for and on behalf of Lessee. If requested by Lessor, then Lessee agrees to execute and deliver any such instruments and agrees to pay or reimburse Lessor for any searches, filings, recordings, inspections, fees, taxes or any other costs incurred as necessary to protect Lessor's interest in the Equipment. Lessee also authorizes Lessor to insert on any Schedule and on related supplemental lease documentation information commonly determined after execution by Lessee such as: serial numbers and other Equipment identification data, Equipment locations, Commencement Dates, and Final Commencement Date. Lessee shall take all steps necessary to ensure that the Equipment is and remains personal property.

**9. ALTERATIONS:** Lessee shall make no alterations, modifications, attachments, improvements, enhancements, revisions or additions to any of the Equipment (collectively called "Alterations"), without Lessor's prior written consent. All Alterations that are made shall become part of the Equipment and shall be the property of Lessor. Equipment which is software shall include all updates, revisions, upgrades, new versions, enhancements, modifications, derivative works, maintenance fixes, translations, adaptations, and copies of the foregoing or of the original version of the software whether obtained from the Manufacturer or from any source whatsoever, and references in this Lease to software will be interpreted as references to any and all of the foregoing.

**10. TAXES:** Lessee shall pay all fees, assessments and taxes (except for income taxes based solely on Lessor's net income assessed by the U.S. Internal Revenue Service and/or any member State of the United States of America), including but not limited to, sales, use, property, excise, intangibles, single business, stamp, documentary and any other costs imposed by any authority, with respect to the use, delivery, rental/lease, possession, purchase, ownership or sale of the Equipment and shall at its own cost and expense keep the Equipment free and clear of all levies, liens or encumbrances arising therefrom. Lessee shall file all required personal property tax returns relating to the Equipment. In the event Lessor files appropriate property tax returns or other reports, Lessee shall upon demand immediately reimburse Lessor for all amounts paid by Lessor, plus processing costs.

**11. LOSS OR DAMAGE:** Lessee shall bear the entire risk of loss, damage, theft, destruction, confiscation, requisition, inoperability, erasure, or incapacity, for or from any cause whatsoever, of any or all Items during the period the Equipment is in transit to or from, or in the possession of, Lessee ("Event of Loss") and shall hold Lessor harmless against same. Immediately upon its discovery, Lessee shall fully inform Lessor of an Event of Loss. Except as provided herein, no Event of Loss shall relieve Lessee of any obligation hereunder, and all Schedules shall remain in full force and effect without any abatement or interruption of rent. In an Event of Loss, Lessee at its option provided no event of default has occurred hereunder, shall: (a) continue to timely make all rental payments and pay all other amounts due under the Lease and, within a commercially expedient time frame, place the Equipment in good working order, repair and condition, or replace the affected Equipment with identical equipment with documentation creating clear title thereto in Lessor; or (b) terminate the Lease with respect to the affected Schedule by paying to Lessor within thirty days the "Casualty Value" which is defined as the sum of: (i) the present value of the unpaid balance of the aggregate rent reserved under the related Schedule calculated using a discount rate of three percent per annum, plus (ii) all accrued but unpaid rentals, taxes, Delinquency Charges, penalties, interest and all or any other sums then due and owing under the related Schedule, plus (iii) the amount of any applicable end of Term purchase option or other end of Term payment or, in the absence thereof, the Fair Market Value of the Equipment, plus (iv) an amount reasonably determined by Lessor to make Lessor whole on an after tax basis for any loss, recapture, or unavailability of any tax credit and/or deduction.

**12. INSURANCE:** Lessee, at its expense, shall provide and maintain in full force and effect at all times that this Lease is in force such casualty, property damage, comprehensive public liability and other insurance in such form and amounts as is and with such companies as shall be satisfactory to Lessor. All such insurance shall provide that it may not be canceled or materially altered without at least thirty days prior written notice to Lessor, shall name Lessor as additional insured and loss payee, and shall not be rescinded, impaired or invalidated by any act or neglect of Lessee.

**13. INDEMNITY:** Lessee shall indemnify, defend, protect, save and hold harmless Lessor, its employees, officers, directors, agents, assigns and successors from and against any and all claims, actions, costs, expenses (including reasonable attorneys' fees), damages (including any interruption of service, loss of business or other consequential damages), liabilities, penalties, losses, obligations, injuries, demands and liens (including any of the foregoing arising or imposed under the doctrines of "strict liability" or "product liability") of any kind or nature arising out of, connected with, relating to or resulting from the manufacture, purchase, sale, lease, ownership, installation, location, maintenance, operation, condition (including latent and other defects, whether or not discoverable), selection, delivery, return, or any accident in connection therewith, of any Item or Items of Equipment, or by operation of law (including any claim for patent, trademark or copyright infringement), regardless of where, how or by whom operated. The provisions of this paragraph shall survive termination or expiration of this Lease.

Celtic Commercial Finance (CMLN 03 03)

Lessee Initial _____   Lessor Initials _____



**14. AUTHORITY OF LESSEE TO ENTER LEASE:** With respect to this Lease and each Schedule now or in the future annexed hereto, Lessee hereby represents, warrants and covenants that: (i) the execution, delivery and performance thereof have been duly authorized by Lessee; (ii) the individuals executing such have been duly authorized to do so; (iii) the execution and/or performance thereof will not result in any default under, or breach of, any judgment, order, law or regulation applicable to Lessee, or of any provision of Lessee's articles of incorporation, bylaws, or any agreement to which Lessee is a party; and (iv) all financial statements and other information submitted by Lessee herewith or at any other time is true and correct without any misleading omissions.

**15. ASSIGNMENT:** Lessee hereby agrees and acknowledges that Lessor may without notice to Lessee, assign all or any part of Lessor's rights, title and interest in and to this Lease, any Schedule, the Equipment, and any of the rentals or other sums payable hereunder, to any assignee ("Assignee") provided any such assignment shall be made subject to the rights of Lessee herein. Lessee hereby acknowledges that any such assignment does not change the duties of, nor the burden of risk imposed on the Lessee and that Lessee shall not look to Assignee to perform any of Lessor's obligations hereunder and shall not assert against Assignee any defense, counterclaim or setoff it may have against Lessor. Lessee agrees that after receipt of written notice from Lessor of any such assignment Lessee shall pay, if directed by Lessor, any assigned rental and other sums payable hereunder directly to Assignee and will execute and deliver to Assignee such documents as Assignee may reasonably request in order to confirm the interest of Assignee in this Lease. **WITHOUT LESSOR'S PRIOR WRITTEN CONSENT, LESSEE SHALL NOT ASSIGN, TRANSFER, ENCUMBER, SUBLET OR SELL THIS LEASE, ANY SCHEDULE, ANY OF THE EQUIPMENT, OR ANY OF ITS INTEREST THEREIN, IN ANY FORM OR MANNER.**

**16. FURTHER ASSURANCES:** Upon Lessor's request, Lessee, promptly and at its expense, shall execute and/or deliver such documents, instruments and/or assurances, and shall take such further action, as Lessor deems prudent in order to establish and/or protect the rights, interests and remedies of Lessor, and for the confirmation, assignment and/or perfection of this Lease and any Schedule hereto, and for the assurance of performance of Lessee's obligations hereunder, such as (but not limited to): a secretary's certificate certifying the authority of the person(s) signing, and/or the resolutions authorizing, this Lease and/or any Schedule; delivery and/or acceptance certificates; insurance certificates; an opinion of Lessee's counsel; financial statements and other credit information as reasonably requested by Lessor; intercreditor agreements; subordinations; and a landlord/mortgagee waiver of rights and interests in the Equipment. If Lessee fails to complete when due any such requested item, Lessor, at its sole discretion and notwithstanding the provisions of Section 3. Term herein, may elect to delay the Final Commencement Date of the affected Schedule until any or all such requested items are completed. Until duly executed by an authorized officer of Lessor, Lessee agrees that this Lease and any Schedule executed by Lessee shall constitute an offer by Lessee to enter into the Lease with Lessor.

**17. DEFAULT:** The occurrence of any of the following shall constitute an event of default hereunder ("Event of Default"): (a) Lessee fails to pay when due any installment of rent or any other amount due hereunder and such failure continues for a period of ten days after receipt of written notice thereof; (b) any financial or other information or any other representation or warranty given to Lessor herein or in connection herewith (including information provided by or on behalf of any Guarantor), proves to be false or misleading; (c) Lessee assigns, transfers, encumbers, sublets or sells this Lease, any Schedule, any of the Equipment, or any of its interest therein, in any form or manner, without Lessor's prior written consent; (d) Lessee fails to observe or perform any other covenant, condition or obligation to be observed or performed by it under this Lease and such failure continues for a period of fifteen days after receipt of written notice thereof; (e) any transaction or series of transactions that results in an ownership change of fifty percent or more of the equity interests of Lessee or any Guarantor of this Lease; (f) Lessee or any Guarantor of this Lease consolidates with or merges into, or sells or leases fifty percent or more of its assets to any individual, corporation, or other entity; (g) Lessee, or any Guarantor of this Lease, ceases doing business as a going concern, dies, makes an assignment for the benefit of creditors, admits in writing its insolvency, files a voluntary petition in bankruptcy, is adjudicated bankrupt or insolvent, files a petition seeking for itself any reorganization, liquidation, dissolution or similar arrangement under any present or future statute, law or regulation, or files an answer admitting the material allegations of a petition filed against it in any such proceedings, consents to or acquiesces in the appointment of a trustee, receiver, or liquidator of it or of any substantial part of its assets, or if its shareholders take any action looking to its dissolution or liquidation; or (h) within sixty days after the commencement of any proceeding against Lessee or any Guarantor of this Lease, seeking reorganization, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such proceedings shall not have been dismissed, or if within sixty days after the appointment without Lessee's consent or acquiescence of any trustee, receiver or liquidator of it or of any substantial part of its assets, such appointment shall not be vacated.

**18. REMEDIES:** If an Event of Default shall occur, Lessor may, in addition to all available remedies it may have at law or in equity, do any or all of the following: (a) proceed, by appropriate court action, to enforce performance by Lessee of the applicable covenants of this Lease and to recover damages for the breach thereof; (b) by written notice to Lessee, terminate this Lease and/or all or any Schedules hereto and Lessee's rights hereunder and/or thereunder; (c) personally or by its agents enter the premises where any of the Equipment is located and take immediate possession of the Equipment without court order or other process of law and free from all claims by Lessee; (d) nullify any end of Term purchase or renewal option; and/or (e) recover all unpaid amounts then due and owing including applicable late charges, plus, as liquidated damages for loss of a bargain and not as a penalty, accelerate and declare to be immediately due and payable the unpaid balance of the aggregate rent and other sums reserved hereunder plus the Fair Market Value of the Equipment, without any presentment,



demand, protest or further notice (all of which are expressly waived by Lessee). In the event Lessor repossesses any of the Equipment, Lessor may sell, lease or otherwise dispose of said Equipment in such manner, at such times, and upon such terms as Lessor may reasonably determine. If Lessor does repossess and sell the Equipment, the proceeds thereof shall be applied to: (i) all costs and expenses (including attorney's fees) of such disposition; (ii) the unpaid accrued rentals, taxes, fees, delinquency charges, interest and all or any other sums due and owing; (iii) the unpaid accelerated rentals; and (iv) the Fair Market Value of the Equipment. Any excess proceeds shall be remitted to Lessee. If Lessor re-leases the Equipment, the re-lease rentals received for the period through the end of the original Base Term of the Lease shall be first applied as described in (i), (ii), (iii), and (iv), above, with any excess to be remitted to the Lessee. The exercise of any of the foregoing remedies by Lessor shall not constitute a termination of the Lease or of any Schedule unless Lessor so notifies Lessee in writing. All remedies of Lessor shall be deemed cumulative and may be exercised concurrently or separately. The waiver by Lessor of any breach of any obligation of Lessee shall not be deemed a waiver of a breach of any other obligation or of any future breach of the same obligation. The subsequent acceptance of rental payments hereunder by Lessor shall not be deemed a waiver of any prior or existing breach by Lessee regardless of Lessor's knowledge of such breach. If any Schedule is deemed at any time to be a lease intended as security, Lessee grants Lessor a security interest in the Equipment to secure its obligations under this Lease and all other indebtedness at any time owing by Lessee to Lessor. Lessee agrees that upon the occurrence of an Event of Default, in addition to all of the other rights and remedies available to Lessor hereunder, Lessor shall have all of the rights and remedies of a secured party under the Uniform Commercial Code.

**19. PERFORMANCE OF LESSEE'S OBLIGATIONS BY LESSOR:** If Lessee fails to perform any of its obligations hereunder, Lessor shall have the right, but shall not be obligated, to perform the same for the account of Lessee without thereby waiving Lessee's default. Any amount paid and any expense, penalty or other liability incurred by Lessor in such performance shall become due and payable by Lessee to Lessor upon demand.

**20. PURCHASE AGREEMENTS:** In the event any of the Equipment is subject to any acquisition or purchase agreement ("Acquisition Agreement") between Lessee and the Manufacturer, then Lessee, as part of this Lease when approved by Lessor, transfers and assigns to Lessor any and all of Lessee's rights, title and interest (excepting that which is inherent to or granted by this Lease), but none of its obligations (except Lessee's obligation to pay for the Equipment, which Lessor shall do after Lessee's acceptance of the Equipment, provided all documentation required by Lessor has been completed and that Lessor's approval remains valid), in and to the Acquisition Agreement(s) and the subject Equipment. IN THE EVENT LESSEE ISSUES A PURCHASE ORDER TO LESSOR WITH RESPECT TO THIS LEASE, ANY SCHEDULE, OR ANY OF THE EQUIPMENT, IT IS AGREED THAT ANY SUCH PURCHASE ORDER IS FOR LESSEE'S INTERNAL PURPOSES ONLY AND THAT NONE OF ITS TERMS AND CONDITIONS SHALL MODIFY THIS LEASE OR ANY RELATED DOCUMENTATION, OR AFFECT EITHER PARTIES' RESPONSIBILITIES AS SET FORTH IN THIS LEASE.

**21. NOTICES:** All notices hereunder shall be in writing and shall be given by personal delivery or sent by certified mail, return receipt requested, or reputable overnight courier service, postage/expense prepaid, to the address of the other party as set forth herein or to any later address last known to the sender. All notices to Lessor shall be addressed to the attention of Vice President, Contracts, and must be executed by an authorized officer of Lessee to be effective. Notice shall be effective upon signed receipt or other evidence of delivery.

**22. APPLICABLE LAW / ARBITRATION:** The parties agree that any action brought to enforce any of the terms, or to recover for any breach, whether based in tort, contract or otherwise, relating to or arising out of this Lease (collectively, "Lease Disputes") will be submitted to the Orange County, California, office of JAMS/Endispute LLC ("JAMS"), for a trial of all issues of law and fact conducted by a retired judge or justice from the panel of JAMS, appointed pursuant to a general reference under California Code of Civil Procedure, Section 638(1) (or any amendment, addition or successor section thereto) unless Lessor or its assignee selects an alternative forum. If the parties are unable to agree on a member of the JAMS panel, then one shall be appointed by the presiding Judge of the California Superior Court for the County of Orange. In the event that JAMS in the County of Orange ceases to exist, then the parties agree that all Lease Disputes will be filed and conducted in the appropriate court having jurisdiction in the County of Orange, unless Lessor or its assignee selects an alternative forum. Lessee agrees to submit to the personal jurisdiction of the appropriate California Court for all Lease Disputes. Lessee waives its rights to a jury trial in any action arising out of or relating to this Lease. The prevailing party in any Lease Disputes is entitled to recover from the other party reasonable attorney's fees and costs, including all JAMS related costs and costs of collection (including judgment enforcement and collection costs). This Lease has been entered into and shall be performed in California and, therefore, this Lease shall be construed in accordance with and shall be governed by, the internal substantive laws of the State of California (exclusive of principles of conflict of laws). TIME IS OF THE ESSENCE.

**23. GENERAL:** Neither this Lease nor any Schedule shall bind Lessor in any manner, and no obligation of Lessor shall arise, until the respective instrument is duly executed by an authorized officer of Lessor. If more than one Lessee is named in this Lease or there is a Guarantor of this Lease, the liability of each shall be joint and several. This Lease and each Schedule shall inure to the benefit of and be binding upon Lessor, Lessee and their respective successors except as expressly provided for herein. All representations, warranties, indemnities and covenants contained herein, or in any document now or at any other time delivered in connection herewith, which by their nature would continue beyond the termination or expiration of this Lease, shall continue in full force and effect and shall survive the termination or expiration of this Lease.

Celtic Commercial Finance (CMLN 03 03)

Lessee Initial _____   Lessor Initials _____



**24. ENTIRE AGREEMENT:** THIS LEASE, TOGETHER WITH ALL DULY EXECUTED SCHEDULES, CONSTITUTES THE ENTIRE AGREEMENT BETWEEN LESSEE AND LESSOR WITH RESPECT TO THE EQUIPMENT AND SHALL SUPERSEDE ANY AND ALL PRIOR PROPOSALS, NEGOTIATIONS AND/OR OTHER COMMUNICATIONS, ORAL OR WRITTEN. NO MODIFICATION TO THIS AGREEMENT SHALL BE EFFECTIVE UNLESS MADE IN WRITING AND DULY EXECUTED BY LESSEE AND AN AUTHORIZED OFFICER OF LESSOR. NO ORAL OR WRITTEN GUARANTY, PROMISE, CONDITION, REPRESENTATION OR WARRANTY SHALL BE BINDING UNLESS MADE A PART OF THIS LEASE BY DULY EXECUTED ADDENDUM. UNLESS SPECIFIED OTHERWISE, IN THE EVENT ANY SUCH DULY EXECUTED MODIFICATION IS ATTACHED TO AND MADE A PART OF ANY SPECIFIC SCHEDULE, THE TERMS AND CONDITIONS OF SUCH MODIFICATION SHALL APPLY ONLY TO THAT SPECIFIC SCHEDULE AND SHALL NOT APPLY TO ANY OTHER SCHEDULE.

**PLEASE INITIAL BELOW TO CERTIFY YOUR ACKNOWLEDGMENT AND AGREEMENT THAT NO MODIFICATION TO THIS LEASE SHALL BE EFFECTIVE UNLESS IN WRITING AND SIGNED BY LESSEE AND AN AUTHORIZED OFFICER OF LESSOR.**

Lessee Initials: _____        Lessor Initials: _____

|  |  |
|---|---|
|  | **Celtic Commercial Finance,** |
| Lessee: __Enercorp Services LLC__ | Lessor: a division of MB Equipment Finance, LLC |
| Signature: _____ | Signature: _____ |
| Name: __Zachry Weir__ | Name: __Sarah A. Powers__ |
| Title: __Member/Manager__ | Title: __Vice President__ |
| Date Offered: __04/26/18__ | Date Accepted: __04/27/18__ |



Addendum "1"
to
Master Lease No. CML-3879A,
by and between
Celtic Commercial Finance, a division of MB Equipment Finance, LLC, as Lessor,
and
**Enercorp Services LLC**, as Lessee (the "Lease")

Notwithstanding the terms and conditions contained in the above referenced Lease, and to the limited extent hereof, Lessor and Lessee hereby acknowledge and agree to the following changes with respect to the above referenced Lease:

1.  Modify Paragraph 6. FAIR MARKET VALUE PURCHASE OPTION / RENEWAL OPTION:

    (a) Add the following sentences to the end of this paragraph: "LESSEE AND LESSOR HEREBY ACKNOWLEDGE AND AGREE THAT THIS TRANSACTION IS INTENDED AS, AND IS, A TRUE LEASE TRANSACTION AND NOT A CREDIT SALE NOR FINANCING. NOTWITHSTANDING THE EXPRESS UNDERSTANDING OF THE PARTIES HERETO, IF A COURT OR ARBITRAL BODY WERE TO DEEM THIS TRANSACTION TO BE A CREDIT SALE OR FINANCING THEN, IN DETERMINING WHETHER OR NOT AMOUNTS DEEMED TO CONSTITUTE INTEREST CONTRACTED FOR, CHARGED OR COLLECTED, EXCEED THE MAXIMUM RATE OF INTEREST ALLOWED FROM TIME TO TIME BY APPLICABLE STATE OR FEDERAL LAW ("HIGHEST LAWFUL RATE"), TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW: (A) AMOUNTS DUE HEREUNDER SHALL BE CHARACTERIZED AS PRINCIPAL, OR AS A NONUSURIOUS EXPENSE, FEE OR PREMIUM, RATHER THAN INTEREST; (B) AMOUNTS DUE HEREUNDER AFTER ACCELERATION BY REASON OF A DEFAULT OR OTHERWISE, OR PREPAID, SHALL NOT BE DEEMED TO CONSTITUTE INTEREST, BUT ANY PORTION OF SUCH AMOUNTS DEEMED TO CONSTITUTE INTEREST, CONTRACTED FOR, CHARGED OR COLLECTED IN CONNECTION WITH SUCH ACCELERATION OR PREPAYMENT MAY NEVER EXCEED THE HIGHEST LAWFUL RATE AND IF SO CHARACTERIZED, ANY SUCH EXCESS INTEREST THAT MAY HAVE BEEN COLLECTED SHALL BE, AT THE OPTION OF LESSOR OR LESSOR'S ASSIGNEE (IF ANY), EITHER APPLIED AS A CREDIT AGAINST THE THEN UNPAID PRINCIPAL AMOUNT HEREUNDER OR REFUNDED TO LESSEE; AND (C) ALL AMOUNTS DEEMED TO CONSTITUTE INTEREST SHALL BE AMORTIZED, PRORATED, ALLOCATED AND SPREAD, IN EQUAL PARTS, THROUGHOUT THE ENTIRE TERM OF THIS LEASE."

2.  Modify Paragraph 18. REMEDIES:

    (a) Add the following sentence to the end of this paragraph: "LESSEE EXPRESSLY WAIVES ANY AND ALL NOTICES RELATED TO LESSOR'S EXERCISE OF ITS OPTION TO ACCELERATE, INCLUDING, BUT NOT LIMITED TO, DEMAND, PRESENTMENT, NOTICE OF INTENT TO ACCELERATE, AND NOTICE OF ACCELERATION."

3.  Modify Paragraph 20. PURCHASE AGREEMENTS:

    (a) Add the following sentence to the end of this paragraph: "LESSEE ACKNOWLEDGES AND AGREES THAT THE PURCHASE PRICE(S) AND OR LICENSE FEES ON ALL OF



Addendum "1" to
Celtic Master Lease No. CML-3879A
Page 2

THE EQUIPMENT SUBJECT TO SAID SCHEDULE, WHETHER PAID BY LESSEE OR LESSOR, IS THE FAIR MARKET VALUE AND/OR FAIR MARKET PRICE FOR THE EQUIPMENT AS OF THE FINAL COMMENCEMENT DATE OF THE SCHEDULE."

4. Modify Paragraph 22. APPLICABLE LAW / ARBITRATION:

   (a) Add the following sentences to the end of this paragraph: "If any provision of this Lease or any Schedule is held by applicable jurisdiction to be invalid, illegal, unenforceable or otherwise prohibited, then such provision, as to such jurisdiction shall be : (a) ineffective to the extent of such prohibition without invalidating the remaining provision hereof; and (b) replaced with a mutually acceptable, valid, legal and enforceable provision which comes closest to the intention of the parties. Any such prohibition in any jurisdiction shall not invalidate such provision in any other jurisdiction, and, where the provisions of any such applicable law may be waived, they are hereby waived by Lessee and Lessor to the full extent permitted, to the end that this Lease and any Schedule shall be deemed a valid and binding agreement in accordance with its terms. No rental, delinquency, liquidated damage or any other charges herein or with respect to any Schedule are intended to exceed the maximum amount permitted by applicable law. If any such charges exceed such maximum, then such charges shall be reduced to the legally permitted maximum charge and Lessee will not be obligated to pay any amount in excess of that permitted by law or, if already paid, such excess shall be refunded."

5. Add a new paragraph to the end of the Lease, as follows:

   25. WAIVER OF CONSUMER RIGHTS:
   "LESSEE HEREBY REPRESENTS AND WARRANTS THAT: 1) THE LEASED PROPERTY IS EXCLUSIVELY FOR BUSINESS USE, AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD USE; AND 2) IN THE NEGOTIATIONS OF THE LEASE, LESSEE IS NOT IN A SIGNIFICANTLY DISPARATE BARGAINING POSITION.  TO THE MAXIMUM EXTENT NOT PROHIBITED BY APPLICABLE LAW, FROM TIME TO TIME IN EFFECT, LESSEE, AFTER CONSULTATION WITH AN ATTORNEY OF ITS OWN SELECTION, HEREBY KNOWINGLY, VOLUNTARILY, IRREVOCABLY AND UNCONDITIONALLY, WAIVES ITS RIGHTS AND REMEDIES UNDER THE TEXAS DECEPTIVE TRADE PRACTICES CONSUMER PROTECTION ACT OF TEXAS BUSINESS AND COMMERCE CODE, SECTION 17.41 ET SEQ., A LAW WHICH GIVES CONSUMERS SPECIAL RIGHTS AND PROTECTION."

Signature: _____    Signature: _____
Name: Zachry Weir                        Name: Sarah A. Powers
Date: 6/11/18                            Date: 06/12/18

IN WITNESS WHEREOF, the parties hereto have executed this Addendum as of the date last set forth below.

Lessee: **Enercorp Services LLC**          Lessor: **Celtic Commercial Finance,**
                                                   a division of MB Equipment Finance, LLC

Signature: _____    Signature: _____
Name: Zachry Weir                        Name: Sarah A. Powers
Title: Member/Manager                    Title: Vice President
Date: 6/11/18                            Date: 06/12/18

L:\ADTXFMV-ML

## LANDLORD/LIENHOLDER WAIVER AGREEMENT

The undersigned is the owner of, or has a mortgage lien or other interest in, the following real property (the "Premises"): 5117 FM 2931, Aubrey, TX 76227.

Celtic Commercial Finance, a division of MB Equipment Finance, LLC, 4 Park Plaza, Suite 300, Irvine, CA 92614 ("Celtic") has or may, from time to time, extend credit to **Enercorp Services LLC** ("Debtor"), secured by or relating to certain equipment which is or will be installed and/or located on the Premises (the "Equipment"). With knowledge that Celtic has extended or may extend credit to Debtor in reliance upon the existence of this Waiver, the undersigned: (a) disclaims any present or future interest in the Equipment, (b) waives all right to levy or distrain, at any time, upon the Equipment, (c) consents to entry by Celtic upon the Premises for the purpose of removing the Equipment therefrom, (d) agrees to cooperate with Celtic in order to facilitate such removal, and (e) in the event the undersigned shall take possession of the Premises as a result of a default under the undersigned's lease or mortgage, or at the expiration or termination of the undersigned's lease, as the case may be, the undersigned may request Celtic to remove the Equipment from the Premises by a date no later than thirty (30) days following delivery of written notice of such request. Celtic shall be responsible for any damage to the Premises that Celtic causes in connection with its entry thereon and removal of the Equipment. This Waiver shall be binding upon the heirs, personal representatives, successors and assigns of the undersigned and shall inure to the benefit of Celtic and its successors and assigns.

LANDLORD __X__ or LIENHOLDER _____ (indicate one)

ZT Equipment, LLC
(print name and address of Landlord or Lienholder on above line)

By: _____
Name: Zachy weir
Title: Manager          Date: 4/26/18

### NOTARY ACKNOWLEDGEMENT

STATE OF __Texas__

COUNTY OF __Dallas__                          ss.

On this ___26___ day of __April 2018__, before me, personally

appeared ___Zachy Weir___

_____ personally known to me (or proved

to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are

subscribed to the within instrument and acknowledged that he/she/they executed the

same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the

instrument the person(s) or the entity upon behalf of which the person(s) acted, executed

the instrument

WITNESS my hand and official seal

_____
Notary Public in and for said County and State

RICHARD ARTHUR ASHTON, III
Notary Public, State of Texas
My Commission Expires
June 01, 2019

1. LLWAIVER

(TO BE TYPED ON LESSEE'S LETTERHEAD)

Date:  April 26, 2018

**Celtic Commercial Finance,**
a division of MB Equipment Finance, LLC
4 Park Plaza, Suite 300
Irvine, CA  92614

RE: Master Lease Agreement No. CML-**3879A** (the "Lease"), by and between Celtic
Commercial Finance, a division of MB Equipment Finance, LLC, as Lessor, and **Enercorp
Services LLC**, as Lessee, and all Lease Schedules annexed thereto, and all duly related
supplemental documentation relating thereto.

Gentlemen:

This letter is confirmation that the real property located at 5117 FM 2931, Aubrey, TX
76227 is owned by ZT Equipment, LLC, outright, and that there are no mortgage holders.

Sincerely,
**ZT Equipment, LLC**

Zachry Weir
Member/Manager



## LIMITED LIABILITY COMPANY CERTIFICATE

THE UNDERSIGNED DOES HEREBY CERTIFY that: (a) I am the member/manager of **Enercorp Services LLC**, a Limited Liability Company duly organized and validly existing under the laws of the state of **Texas**; and (b) that the persons whose names and signatures appear below are, and have been at all times, duly qualified and authorized to execute, on behalf of this Limited Liability Company, any and all documents and instruments in connection with the lease, purchase, sale or other disposition of personal property from or to Celtic Commercial Finance, a division of MB Equipment Finance, LLC including, but not limited to, Master Leases, Lease Schedules, Purchase and Sale Agreements, and other documents relating thereto.

| NAME | TITLE | SIGNATURE |
|------|-------|-----------|
| Zachry Weir | Member/Manager | |

Signed and Certified this __26__ day of __April__, 20__17__.

Signature: _____

Name: _Zachry Weir_____

Title: __Member/Manager___

STATE OF _Texas_____
COUNTY OF _Dallas_____ . SS
On this _26_ day of _April_____ , 20 _16_, before me, personally appeared
_Zachry Weir_____

_____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is are subscribed to the within instrument and acknowledged that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

_____
Notary Public in and for said County and State

RICHARD ARTHUR ASHTON, III.
NOTARY PUBLIC, State of Texas
My Commission Expires
June 01, 2019

L:\CC000 LLC



# CELTIC

**LEASE SCHEDULE** No. 3879A01
**Celtic Commercial Finance,** a division of MB Equipment Finance, LLC — Lessor

ANNEXED TO AND MADE A PART OF MASTER
LEASE NO. CML-3879A DATED 04/27/18

4 PARK PLAZA, SUITE 300  IRVINE, CALIFORNIA 92614 • (949) 263-3880 • FAX (949) 263-1331

Lessee : **Enercorp Services LLC**

Corporate
Address : 10850 Luna Road, Dallas, TX 75220

Contact : Zachry Weir _____ Title: Member/Manager _____ Phone No. (214) 563-3273

Equipment
Location : 5117 FM 2931, Aubrey, TX 76227

Contact : Zachry Weir _____ Title: Member/Manager _____ Phone No. (214) 563-3273

This Schedule is issued pursuant to the Master Lease referenced above between Lessee and Lessor. All of the terms and conditions of the Master Lease are incorporated herein and made a part hereof as if such terms and conditions were set forth in this Schedule. By their execution and delivery of this Schedule, the parties hereby reaffirm all of the terms and conditions of the Master Lease.

Equipment Leased:

| ITEM | QTY | SERIAL NO. | DESCRIPTION |
|------|-----|------------|-------------|

VENDOR(S): to be determined

1.-? various — Items of Equipment expected to include: miscellaneous equipment including excavators, dozers, rolling stock, skid steers, and related equipment, and/or other related and/or accessory property. Items 1. and on shall be enumerated and described in further detail, including location and vendor name, at a later date on the related applicable Acceptance Certificate(s).

NOTE: Equipment cost to Lessor not to exceed: $500,000.00

| MONTHLY RENT | BASE TERM IN MONTHS | DEPOSIT APPLIED TO LAST BILLING CYCLE | BILLING CYCLE | FINAL COMMENCEMENT DATE |
|---|---|---|---|---|
| $9,500.00 (PLUS APPLICABLE TAXES) | 60 | ONE MONTH'S RENT | [X] MONTHLY  [ ] QUARTERLY  [ ] BIANNUALLY  [ ] ANNUALLY | June 08, 2018 |

By execution hereof, the parties hereby reaffirm their acknowledgment and agreement that no modification to this Lease shall be effective unless in writing and signed by Lessee and an authorized officer of Lessor.

## OFFER

Lessee: **Enercorp Services LLC**

Signature: _____

Name: Zachry Weir

Title: Member/Manager

Date: 4/26/18

## ACCEPTANCE

**Celtic Commercial Finance,**

Lessor: a division of MB Equipment Finance, LLC

Signature: _____

Name: Sarah A. Powers

Title: Vice President

Date: 04/27/18

Report Run Date: 06/12/2018 09:09

## Wire Detail Report - MB Equipment Finance

### Fedwire

Celtic-MB Equipment Finance

| Payment Number | Confirmation# | Status | Amount |
|---|---|---|---|
| 2758974 | | Pending Approval | 527,125.00 USD |

| | |
|---|---|
| From Template: | N |
| Value Date: | 06/12/2018 |
| Send Date: | 06/12/2018 |
| Sender Reference: | CML 3879A01 |
| Debit Account#: | XXXXX01236-USD |
| Reference for Recipient: | ENERCORP SERVICE |
| Recipient ID Type: | Account Number |
| Recipient ID: | 01021817 |
| Recipient Name: | LIUGONG CONSTRUCTION MACHINERY N.A. |
| Recipient Address 1: | 22220 MERCHANTS WAY, SUITE 100, |
| Recipient Address 2: | KATY, TX 77449 |
| Recipient Bank ID Type: | ABA (Wire) |
| Recipient Bank ID: | 026003269 |
| Recipient Bank Name: | BANK OF CHINA, NEW YORK |
| Details of Payment Line 1: | CONVENIENCE FUNDING OF ITEMS 1, 3 |
| Details of Payment Line 2: | ATTN: ACCTS RECEIVABLE 281/579-8882 |
| Details of Payment Line 3: | CML-3879A01 ENERCORP SERVICES LLC |

*Ok*

*kv*

*6/12/18*

| Date/Time | Log In ID | Action |
|---|---|---|
| 06/12/2018 09:08 | ABISTA@Celtic | create |

| | | | |
|---|---|---|---|
| | | Total: | 527,125.00 |

End Of Report

### Filter Criteria:

Wire Payment IDs:

2758974



**LiuGong Construction Machinery N.A. LLC**

22220 Merchants Way, Suite 100, Katy, Texas 77449
Phone: (281)579-8882    Fax:(281)519-8333
eMail:AR@LiuGongNA.com   Federal Tax ID : 26-1697225



## Sales Invoice

| SOLD TO: 299999 | | SHIP TO: | |
|---|---|---|---|
| Company | | Company | |
| Celtic Commercial Finance | | Enercorp Services, LLC | |
| 4 Park Plaza, Suite 300 | | 5117 FM 2931 | |
| Irvine, CA 92614 | | Aubrey TX 76277 | |

| Invoice NO. | 8514006536 | Invoice Date: | 05/23/2018 |
|---|---|---|---|
| Order Number: | 8510305225 | Payment Terms: | Within 5 days Due net |
| Delivery Order: | 8511007100 | Ship By: (Delivered) | |
| Invoice Email To: | | | |

| Item | Material NO. | Description | PO Ref. | Sales Qty | Unit Price USD | Net Amount USD |
|---|---|---|---|---|---|---|
| 1 | 40N00030002B001 (LDM4950014P033826) **TD-15M EXTRA LGP Dressta Crawler Dozer** PO: PT-17001 S/N: LDM4950014P033826 USED 2014 / TD-15 DRESSTA CRAWLER DOZER / TIER III / 6-WAY LGP / A/C, PRESSURIZER, DEFROSTER-HEAT / AIR RECIRCULATION SYSTEM WITH MSHA FILTER / AM/FM CD RADIO / CAB / SUN VISOR IN CAB / ROPS (REQ.F/CAB CODE 1600 OR 1630) / SEAT, SUSPENSION, FABRIC COVER / CRANKCASE GUARD / FINAL DRIVE ROCK GUARD / TANK GUARD, BOLTED / TRACK ROLLER GUARDS / TRANSMISSION GUARD / BATTERIES, COLD START / LIGHTS FOR CAB, 2 FRONT, 2 REAR / STARTING-CHARGING PLUG ASSEMBLY / VANDALISM SYSTEM WITH ENGINE ENCLOSURES / MIRRORS, 2PCS, EXTERIOR, CAB MOUNTED / 26" TRACK SHOES / POWER OUTLET-ACCESSORY, 12V, 10A CAPACITY. | | | 1 PC | 129,000.00 | 129,000.00 |

| | | |
|---|---|---|
| **Subtotal** | | 129,000.00 |
| **Total** | | 129,000.00 |

**Total Amount: US Dollar One hundred twenty-nine thousand and zero cents only.**

WARRANTY: INCLUDES 1 YEAR / 2000 HOUR
TRANSPORTATION: DELIVERED TO ENERCORP
FOB: LEAGUE CITY, TX
PAYMENT TERMS: CASH NET 5

CONGRATULATIONS AND THANK YOU FOR YOUR PURCHASE!

| Address: | eMail:AR@LiuGongNA.com | **BANK WIRING INSTRUCTIONS:** |
|---|---|---|
| LiuGong Construction Machinery N.A. LLC | Phone:(281)579-8882 | Account Name:LiuGong Construction Machinery N.A.,LLC |
| 22220 Merchants Way, Suite 100 | Fax:(281)579-8388 | Account Number:01021817 |
| Katy, Texas 77449 | | Routing Number: 026003269 |
| | | International Swift Number:BKCHUS33 |
| Page:1/2 | | Domestic Swift Number:(RTN/ABA)026003269 |
| | | Bank Name:Bank of China New York |

# LiuGong Construction Machinery N.A. LLC



22220 Merchants Way, Suite 100, Katy, Texas 77449
Phone: (281)579-8882    Fax:(281)519-8333
eMail:AR@LiuGongNA.com    Federal Tax ID : 26-1697225

## Sales Invoice

| **SOLD TO: 299999** | **SHIP TO:** |
|---|---|
| Company | Company |
| Celtic Commercial Finance | Enercorp Services, LLC |
| 4 Park Plaza, Suite 300 | 10850 Luna Road |
| Irvine, CA 92614 | Dallas TX 75220 |

| | | | |
|---|---|---|---|
| Invoice NO. | 8514006536 | Invoice Date: | 05/23/2018 |
| Order Number: | 8510305225 | Payment Terms: | Within 5 days Due net |
| Delivery Order: | 8511007100 | Ship By: (Delivered) | |
| Invoice Email To: | | | |

**Authorized LiuGong NA Representative**          **Authorized Customer Representative**

Address:
LiuGong Construction Machinery N.A. LLC
22220 Merchants Way, Suite 100
Katy, Texas 77449

eMail:AR@LiuGongNA.com
Phone:(281)579-8882
Fax:(281)579-8388

**BANK WIRING INSTRUCTIONS:**
Account Name:LiuGong Construction Machinery N.A.,LLC
Account Number:01021817
Routing Number: 026003269
International Swift Number:BKCHUS33
Domestic Swift Number:(RTN/ABA)026003269
Bank Name:Bank of China New York

Page:2/2

5/29/2018                                Dressta TD15M LT Crawler Tractor



# RITCHIESpecs

Everything about Equipment                              **Current number of specifications**

Home → Spec Search → Co → Crawler Tractor → Dressta → TD15M LT

## DRESSTA TD15M LT CRAWLER TRACTOR                    VIEW ARTICLES ON THIS ITEM

🖨 Print specification

**Looking to purchase this item?**                     **Need to sell equipment?**

Find a Dressta TD15M LT Crawler Tractor being sold at Ritchie Bros.     Complete this form and a Ritchie Bros. representative will contact you.
auctions.







### Selected Dimensions

#### Dimensions

| | | |
|---|---|---|
| B. WIDTH OVER TRACKS | 9.2 ft in | 2810 mm |
| C. HEIGHT TO TOP OF CAB | 11.3 ft in | 3450 mm |
| E. GROUND CLEARANCE | 1.5 ft in | 445 mm |
| F. LENGTH W/O BLADE | 19.2 ft in | 5830 mm |

#### Undercarriage

| | | |
|---|---|---|
| H. STANDARD SHOE SIZE | 20 in | 508 mm |

### Specification

#### Engine

| | | |
|---|---|---|
| MAKE | Cummins | |
| MODEL | QSC 8.3 | |
| GROSS POWER | 205 hp | 153 kw |
| NET POWER | 190 hp | 142 kw |
| DISPLACEMENT | 505 cu in | 8.3 L |
| TORQUE MEASURED @ | 1500 rpm | |
| ASPIRATION | Turbocharged and CAC | |
| NUMBER OF CYLINDERS | 6 | |

#### Operational

| | | |
|---|---|---|
| OPERATING WEIGHT | 44665 lb | 20260 kg |
| FUEL CAPACITY | 102.5 gal | 388 L |
| COOLING SYSTEM FLUID CAPACITY | 13.2 gal | 50 L |
| ENGINE OIL CAPACITY | 6.1 gal | 23 L |
| HYDRAULIC FLUID CAPACITY | 16 gal | 60 L |
| POWERTRAIN FLUID CAPACITY | 40.4 gal | 153 L |
| FINAL DRIVES FLUID CAPACITY | 10.6 gal | 40 L |
| OPERATING VOLTAGE | 12 V | |

#### Transmission

| | | |
|---|---|---|
| TYPE | Modular, countershaft type power shift, electro-hydraulic control | |
| NUMBER OF FORWARD GEARS | 3 | |
| NUMBER OF REVERSE GEARS | 3 | |
| MAX SPEED - FORWARD | 6.3 mph | 10.2 km/h |
| MAX SPEED - REVERSE | 7.4 mph | 11.9 km/h |

5/29/2018                                          Dressta TD15M LT Crawler Tractor

**Undercarriage**

| GROUND PRESSURE | 9.5 psi | 65.8 kPa |
|---|---|---|
| GROUND CONTACT AREA | 4.8 in2 | 3.1 m2 |
| STANDARD SHOE SIZE | 20 in | 508 mm |
| NUMBER OF SHOES PER SIDE | 43 | |
| NUMBER OF TRACK ROLLERS PER SIDE | 8 | |

**Hydraulic System**

| PUMP TYPE | Pump, tandem gear, driven from torque converter | |
|---|---|---|
| RELIEF VALVE PRESSURE | 2500 psi | 17236.9 kPa |
| PUMP FLOW CAPACITY | 46 gal/min | 173 L/min |

**Standard Blade**

| WIDTH | 13.5 ft in | 4130 mm |
|---|---|---|
| HEIGHT | 44 in | 1120 mm |
| CAPACITY | 5 yd3 | 3.8 m3 |
| BLADE ANGLE (BOTH DIRECTIONS) | 25 degrees | |
| CUTTING DEPTH | 24 in | 600 mm |

**Dimensions**

| LENGTH W/O BLADE | 19.2 ft in | 5830 mm |
|---|---|---|
| WIDTH OVER TRACKS | 9.2 ft in | 2810 mm |
| HEIGHT TO TOP OF CAB | 11.3 ft in | 3450 mm |
| GROUND CLEARANCE | 1.5 ft in | 445 mm |

---

© 2007-2018 RitchieSpecs Equipment Specifications Ritchie Bros. Auctioneers ⚙ | **Terms of Use** | **Privacy Statement**
OEM specifications are provided for base units. Actual equipment might vary with options.

## LiuGong Construction Machinery N.A. LLC

22220 Merchants Way, Suite 100, Katy, Texas 77449
Phone: (281)579-8882     Fax:(281)519-8333
eMail:AR@LiuGongNA.com   Federal Tax ID : 26-1697225



## Sales Invoice

| SOLD TO: 299999 | SHIP TO: |
|---|---|
| Company | Company |
| Celtic Commercial Finance | Enercorp Services, LLC |
| 4 Park Plaza, Suite 300 | 5117 FM 2931 |
| Irvine, CA 92614 | Aubrey TX 76277 |

| Invoice NO. | 8514006532 | Invoice Date: | 05/23/2018 |
|---|---|---|---|
| Order Number: | 8510304474 | Payment Terms: | Within 5 days Due net |
| Delivery Order: | 8511007096 | Ship By: (Delivered) | |
| Invoice Email To: | | | |

| Item Material NO. | Description | PO Ref. | Sales Qty | Unit Price USD | Net Amount USD |
|---|---|---|---|---|---|
| 1   **11F00410001B001 (CLG0936EKGE050165)** | | | 1 PC | 185,625.00 | 185,625.00 |

**CLG936E HYDRAULIC EXCAVATOR/Cummins4F/1.**
PO: PT-17001
S/N: CLG0936EKGE050165

NEW 2016 / CUMMINS ENGINE IV / ROPS CAB / DUAL WAY AUXILIARY
LINES / QUICK COUPLER LINE TO BOOM FOOT / 800MM TRACK SHOE /
ROTATING BEACON / TRAVEL ALARM / REARVIEW CAMERA / 1.6 CUBIC
METER H.D. BUCKET / MAIN PUMP READY FOR PTO / AIR CONDITIONER /
MECHANICAL SUSPENSION SEAT / WORKING LIGHTS / 2MM THICKNESS
BELLY GUARD / 2 SPEED TRAVEL SYSTEM WITH AUTOMATIC SHIFT /
COVER PLATE UNDER TRAVEL FRAME / POWER BOOST.

| | | |
|---|---|---|
| **Subtotal** | | 185,625.00 |
| **Total** | | 185,625.00 |

**Total Amount: US Dollar One hundred eighty-five thousand six hundred twenty-five and zero cents only.**

WARRANTY: INCLUDES 3 YEAR / 4000 HOUR / PLUS 5 YEAR 7000K PT&H
TRANSPORTATION: DELIVERED TO ENERCORP
FOB: LAKESIDE, CA
PAYMENT TERMS: CASH NET 5

CONGRATULATIONS AND THANK YOU FOR YOUR PURCHASE!

_____          _____
**Authorized LiuGong NA Representative**          **Authorized Customer Representative**

Address:                                          eMail:AR@LiuGongNA.com     **BANK WIRING INSTRUCTIONS:**
LiuGong Construction Machinery N.A. LLC   Phone:(281)579-8882        Account Name:LiuGong Construction Machinery N.A.,LLC
22220 Merchants Way, Suite 100            Fax:(281)579-8388          Account Number:01021817
Katy, Texas 77449                                                    Routing Number: 026003269
                                                                     International Swift Number:BKCHUS33
Page:1/1                                                             Domestic Swift Number:(RTN/ABA)026003269
                                                                     Bank Name:Bank of China New York

**Engine**
**Cummins QSL9 Tier 4 Final**
Gross Power
**296 hp (221 kW)**
Operating Weight
**80,689 lbs (36,603 kg)**
Bucket Capacity
**2.09 yd³ (1.6 m³)**
Maximum Digging Depth
**24 ft 1 in (7,340 mm)**

# 936E   EXCAVATOR

 LiuGong



TOUGH WORLD, TOUGH EQUIPMENT.

# 936E
# SPECIFICATIONS >>>

## ENGINE

| | |
|---|---|
| Emissions Regulation | Tier 4 Final / Stage IV |
| Make | Cummins |
| Model | QSL9 |
| Gross Power | 296 hp (221 kW) @ 2,000 rpm |
| Net Power | 280 hp (209 kW) @ 2,000 rpm |
| Peak Torque | 1,070 lb-ft @ 1,400 rpm / 1,451 N-m @ 1,400 rpm |
| Number of Cylinders | 6 |
| Displacemen | 549 in³ (9 L) |

## TRACK DRIVE

| | |
|---|---|
| Maximum Travel Speed | High: 3.4 mph (5.5 km/h) / Low: 2.1 mph (3.4 km/h) |
| Drawbar Pull | 71,938 lbf (320 kN) |

## UNDERCARRIAGE

| | |
|---|---|
| Shoe Width | 31.5 in (800 mm) |
| Number of Shoes per Side | 48 |
| Link Pitch | 8.5 in (216 mm) |
| Number of Bottom Rollers per Side | 9 |
| Number of Top Rollers per Side | 2 |

## HYDRAULIC SYSTEM

| | |
|---|---|
| Main Pumps Total Flow | 2 × 79 gal/min (2 × 300 L/min) |
| Relief Pressure, main | 4,975 psi (34.3 MPa) |
| Relief Pressure, boost | 5,410 psi (37.3 MPa) |

## SWING SYSTEM

| | |
|---|---|
| Swing Speed | 10.0 rpm |
| Swing Torque | 81,869 lb-ft (111,000 N-m) |

## REFERENCE ARM

| | |
|---|---|
| Arm Length | 10 ft 6 in (3.2 m) |
| Arm Digging Force (ISO) | Normal 38,217 lbf (170 kN) / Power Boost 41,589 lbf (185 kN) |

## WORKING RANGES

| | |
|---|---|
| Maximum Dig Depth | 24 ft 1 in (7,340 mm) |
| Reach at Ground Level | 35 ft 9 in (10,900 mm) |
| Depth of 8' Level Bottom | 23 ft 7 in (7,180 mm) |
| Maximum Dig Height | 33 ft 7 in (10,240 mm) |
| Dump Height | 23 ft 6 in (7,160 mm) |
| Maximum Dig Depth of Vertical Wall | 21 ft 2 in (6,460 mm) |

## BUCKET PERFORMANCE

| | |
|---|---|
| Standard Bucket Heaped Capacity ( Referenced ) | 2.09 yd³ (1.6 m³) |
| Maximum Heaped Capacity of Bucket Options | 2.5 yd³ (1.9 m³) |
| Bucket Digging Force (ISO) | Normal 52,155 lbf (232 kN) / Power Boost 56,651 lbf (252 kN) |

## SERVICE CAPACITIES

| | |
|---|---|
| Fuel Tank | 163.8 gal (620 L) |
| Engine Oil | 7.9 gal (30 L) |
| Final Drive Each | 2.5 gal (9.5 L) |
| Swing Drive | 2.8 gal (10.5 L) |
| Cooling System | 9.8 gal (37 L) |
| Hydraulic Reservoir | 63.4 gal (240 L) |
| Hydraulic System Total | 118.9 gal (450 L) |
| DEF tank | 9.2 gal (35 L) |

## Boom: 21 ft 0 in (6.4 m) Arm: 10 ft 6 in (3.2 m) Shoes: 31.5 in (800 mm) Counterweight: 14,330 lbs (6,500 kg) Bucket Weight 4,222 lbs (1,915 kg)

| Lift Point Height | | 10 ft | | 15 ft | | 20 ft | | 25 ft | | 30 ft | | Max Reach | Distance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 20 ft | lbs | | | | | | | *17,525 | 15,549 | | | *17,258 | 13,492 | 27 ft |
| 15 ft | lbs | | | | | *21,292 | 20,906 | *18,671 | 15,108 | | | *17,443 | 11,865 | 29 ft |
| 10 ft | lbs | | | *32,904 | 29,326 | *24,374 | 19,762 | *20,234 | 14,535 | *17,919 | 11,212 | *17,809 | 11,032 | 30 ft |
| 5 ft | lbs | | | *37,593 | 27,471 | *27,057 | 18,770 | *21,704 | 13,995 | 18,957 | 10,957 | 17,013 | 10,791 | 30 ft |
| 0 ft | lbs | | | *39,015 | 26,720 | *28,554 | 18,152 | *22,608 | 13,618 | 17,910 | 10,390 | 17,390 | 10,639 | 30 ft |
| - 5 ft | lbs | *52,507 | *52,507 | *37,988 | 26,629 | *28,532 | 17,930 | *22,500 | 13,468 | *13,655 | 7,066 | 19,021 | 11,552 | 28 ft |
| - 10 ft | lbs | *46,985 | *46,985 | *34,862 | 26,951 | *26,698 | 18,058 | *20,642 | 13,620 | | | *20,252 | 13,408 | 25 ft |
| - 15 ft | lbs | *37,734 | *37,734 | *28,881 | 27,687 | *21,914 | 18,607 | | | | | *20,066 | 17,158 | 21 ft |

1. * Indicates the load is limited by hydraulic capacity rather than tipping capacity.
2. The above loads are in compliance with ISO 10567 hydraulic capacity rating standards. They do not exceed 87% of the hydraulic lifting capacity or 75% tipping load.
3. Ratings are at bucket capacity lift hook.





Unit: mm

## DIMENSIONS

| | | | | |
|---|---|---|---|---|
| A | 36 ft 8 in (11,167 mm) | G | 10 ft 4 in (3,163 mm) |
| B | 11 ft 7 in (3,530 mm) | H | 11 ft 6 in (3,500 mm) |
| C | 8 ft 6 in (2,590 mm) | I | 3 ft 10 in (1,172 mm) |
| D | 11 ft 1 in (3,390 mm) | J | 10 ft 10 in (3,318 mm) |
| E | 13 ft 3 in (4,050 mm) | K | 1 ft 9 in (532 mm) |
| F | 16 ft 2 in (4,944 mm) | | |

LiuGong Construction Machinery N.A., LLC
22220 Merchants Way, Suite 100, Katy, Texas 77449
T: (281) 579-8882 F: (281) 579-8388
www.liugongna.com

04/2018 Designed by LiuGong

Specifications and designs are subject to change without notice. Machines shown may include optional equipment.

**LiuGong Construction Machinery N.A. LLC**

22220 Merchants Way,Suite 100,Katy,Texas 77449
Phone: (281)579-8882    Fax:(281)519-8333
eMail:AR@LiuGongNA.com    Federal Tax ID : 26-1697225



**Sales Invoice**

| SOLD TO: 299999 | SHIP TO: |
|---|---|
| Company | Company |
| Celtic Commercial Finance | Enercorp Services, LLC |
| 4 Park Plaza, Suite 300 | 5117 FM 2931 |
| Irvine, CA 92614 | Aubrey TX  76277 |

| | | | |
|---|---|---|---|
| Invoice NO. | 8514006535 | Invoice Date: | 05/23/2018 |
| Order Number: | 8510305218 | Payment Terms: | Within 5 days Due net |
| Delivery Order: | 8511007099 | Ship By: (Delivered) | |
| Invoice Email To: | | | |

| Item | Material NO. | Description | PO Ref. | Sales Qty | Unit Price USD | Net Amount USD |
|---|---|---|---|---|---|---|
| 1 | 40N00080001B001 (LDM7850001P075203) | | | 1 PC | 212,500.00 | 212,500.00 |
| | TD-25M EXTRA Dressta Crawler Dozer | | | | | |
| | PO: Verbal PO | | | | | |
| | S/N: LDM7850001P075203 | | | | | |

USED 2012 / TD25 EXTRA DRESSTA CRAWLER DOZER / TIER III / FULL
U-DOZER / RIPPER MULTI-SHANK / 3-SPOOL VALVE / AM/FM RADIO /
CRANKCASE GUARD / TRANSMISSION GUARD / ROCK DEFLECTOR
SPROCKET GUARD / TRACK ROLLER GUARD, FULL LENGTH / TANK
GUARD BOLTED / MSHA FILTER / SCREENS FOR CAB LIGHTS / SCREENS
FOR TRACTOR LIGHTS / CAB FOR SCREENING INSTALLATION / SCREENS
FOR CAB WINDOWS / HYDRAULIC TILT/PITCH / VANDALISM SYSTEM /
STARTING-CHARGING RECEPTACLE PLUG / SCREEN REAR / 24/12
CONVERTER / SWEEPS FOR CAB FRONT AND REAR / ENGINE BLOCK
HEATER / 2 ADDITIONAL LIGHTS / FUEL HEATER-RACOR / LIGHTS 2 FRONT
MOUNTED.

| | |
|---|---|
| **Subtotal** | 212,500.00 |
| **Total** | 212,500.00 |

**Total Amount: US Dollar Two hundred twelve thousand five hundred and zero cents only.**

WARRANTY: INCLUDES 1 YEAR / 2000 HOUR
TRANSPORTATION: DELIVERED TO ENERCORP
FOB: CUMMING, GA
PAYMENT TERMS: CASH NET 5

CONGRATULATIONS AND THANK YOU FOR YOUR PURCHASE!

| Address: | eMail:AR@LiuGongNA.com | **BANK WIRING INSTRUCTIONS:** |
|---|---|---|
| LiuGong Construction Machinery N.A. LLC | Phone:(281)579-8882 | Account Name:LiuGong Construction Machinery N.A.,LLC |
| 22220 Merchants Way,Suite 100 | Fax:(281)579-8388 | Account Number:01021817 |
| Katy,Texas 77449 | | Routing Number: 026003269 |
| | | International Swift Number:BKCHUS33 |
| Page:1/2 | | Domestic Swift Number:(RTN/ABA)026003269 |
| | | Bank Name:Bank of China New York |

3

**LiuGong Construction Machinery N.A. LLC**

22220 Merchants Way, Suite 100, Katy, Texas 77449
Phone: (281)579-8882    Fax:(281)519-8333
eMail:AR@LiuGongNA.com    Federal Tax ID : 26-1697225



## Sales Invoice

| SOLD TO: 299999 | SHIP TO: |
|---|---|
| Company | Company |
| Celtic Commercial Finance | Enercorp Services, LLC |
| 4 Park Plaza, Suite 300 | 10850 Luna Road |
| Irvine, CA 92614 | Dallas TX 75220 |

| | | | |
|---|---|---|---|
| Invoice NO. | 8514006535 | Invoice Date: | 05/23/2018 |
| Order Number: | 8510305218 | Payment Terms: | Within 5 days Due net |
| Delivery Order: | 8511007099 | Ship By: (Delivered) | |
| Invoice Email To: | | | |

_____          _____
Authorized LiuGong NA Representative       Authorized Customer Representative

Address:
LiuGong Construction Machinery N.A. LLC
22220 Merchants Way, Suite 100
Katy, Texas 77449

Page:2/2

eMail:AR@LiuGongNA.com
Phone:(281)579-8882
Fax:(281)579-8388

**BANK WIRING INSTRUCTIONS:**
Account Name:LiuGong Construction Machinery N.A.,LLC
Account Number:01021817
Routing Number: 026003269
International Swift Number:BKCHUS33
Domestic Swift Number:(RTN/ABA)026003269
Bank Name:Bank of China New York

3

5/29/2018                                    Dressta TD25M Crawler Tractor

 **RITCHIE**Specs   *Everything about Equipment*        **Current number of specifications**



Home → Spec Search → Co → Crawler Tractor → Dressta → TD25M

### DRESSTA TD25M CRAWLER TRACTOR

VIEW ARTICLES ON THIS ITEM

🖶 Print specification

**Looking to purchase this item?**

Find a Dressta TD25M Crawler Tractor being sold at Ritchie Bros. auctions.

**Need to sell equipment?**

Complete this form and a Ritchie Bros. representative will contact you.





Selected Dimensions



**Dimensions**

| Dimensions | | |
|---|---|---|
| B. WIDTH OVER TRACKS | 10.5 ft in | 3210 mm |
| C. HEIGHT TO TOP OF CAB | 12.5 ft in | 3800 mm |
| F. LENGTH W/O BLADE | 16.6 ft in | 5070 mm |

| Undercarriage | | |
|---|---|---|
| H. STANDARD SHOE SIZE | 22 in | 560 mm |

Specification

**Engine**

| | | |
|---|---|---|
| MAKE | Cummins | |
| MODEL | QSX15 | |
| GROSS POWER | 375 hp | 280 kw |
| NET POWER | 330 hp | 246 kw |
| POWER MEASURED @ | 1800 rpm | |
| DISPLACEMENT | 912 cu in | 15 L |
| TORQUE MEASURED @ | 1400 rpm | |
| ASPIRATION | Turbocharged and CAC | |
| NUMBER OF CYLINDERS | 6 | |

**Operational**

| | | |
|---|---|---|
| OPERATING WEIGHT | 79873 lb | 36230 kg |
| FUEL CAPACITY | 218 gal | 825 L |
| COOLING SYSTEM FLUID CAPACITY | 15 gal | 56 L |
| ENGINE OIL CAPACITY | 13 gal | 49 L |
| HYDRAULIC FLUID CAPACITY | 34 gal | 130 L |
| POWERTRAIN FLUID CAPACITY | 63 gal | 240 L |
| FINAL DRIVES FLUID CAPACITY | 16.9 gal | 64 L |
| OPERATING VOLTAGE | 12 V | |
| ALTERNATOR SUPPLIED AMPERAGE | 50 amps | |

**Transmission**

| | | |
|---|---|---|
| TYPE | Modular, countershaft type power shift, electro-hydraulic control. | |
| NUMBER OF FORWARD GEARS | 3 | |
| NUMBER OF REVERSE GEARS | 3 | |
| MAX SPEED - FORWARD | 6.4 mph | 10.3 km/h |
| MAX SPEED - REVERSE | 7.6 mph | 12.3 km/h |

*3*

5/29/2018                                      Dressta TD25M Crawler Tractor

**Undercarriage**

| | | |
|---|---|---|
| GROUND PRESSURE | 14.6 psi | 100 kPa |
| GROUND CONTACT AREA | 5456 in2 | 3.5 m2 |
| STANDARD SHOE SIZE | 22 in | 560 mm |
| NUMBER OF SHOES PER SIDE | 38 | |
| NUMBER OF TRACK ROLLERS PER SIDE | 7 | |

**Hydraulic System**

| | | |
|---|---|---|
| PUMP TYPE | Multiple vane pumps, driven from torque converter | |
| RELIEF VALVE PRESSURE | 1 psi | kPa |
| PUMP FLOW CAPACITY | 1 gal/min | 1.7 L/min |

**Standard Blade**

| | | |
|---|---|---|
| WIDTH | 14.3 ft in | 4350 mm |
| HEIGHT | 69.3 in | 1760 mm |
| CAPACITY | 15 yd3 | 11.5 m3 |
| BLADE ANGLE (BOTH DIRECTIONS) | 25 degrees | |
| CUTTING DEPTH | 66.9 in | 1700 mm |

**Dimensions**

| | | |
|---|---|---|
| LENGTH W/O BLADE | 16.6 ft in | 5070 mm |
| WIDTH OVER TRACKS | 10.5 ft in | 3210 mm |
| HEIGHT TO TOP OF CAB | 12.5 ft in | 3800 mm |

© 2007-2018 RitchieSpecs Equipment Specifications Ritchie Bros. Auctioneers ∞ | Terms of Use | Privacy Statement
OEM specifications are provided for base units. Actual equipment might vary with options.

and at any time. That's more than our goal. That's our pledge. Contact your nearest dealer for more information.

# LiuGong North America Contact Information

22220 Merchants Way - Suite 100
Katy, TX 77449
USA
P: +1 (281) 579-8882
F: +1 (281) 579-8388
E: info@liugongna.com

# China Contact Information

Guangxi LiuGong Machinery Co., Ltd
No. 1 Liutai Road, Liuzhou, Guangxi, China
Overseas Sales & Marketing Division
P: +86 (772) 388-6124 (channel management)
P: +86 (772) 388-6125 (key account)
P: +86 (772) 388-6556 (service)
E: overseas@liugong.com



LiuGong Construction Machinery N.A. LLC
22220 Merchants Way,Suite 100
Katy,Texas 77449
eMail:AR@LiuGongNA.com
Phone:(281)579-8882
Fax:(281)579-8388

## PAYMENT INSTRUCTIONS:

Remit to:

Liugong Construction Machinery, N.A. LLC
22220 Merchants Way, Suite 100, Katy, TX 77449

Wire Payments To:

Account Name: LiuGong Construction Machinery
N.A., LLC
Address: 22220 Merchants Way, Suite 100, Katy, TX
77449

Bank Name: Bank of China New York
Address: 1045 Avenue of the America, New York, NY
10018
Account #: 01021817
Routing Number: 026003269
International Swift #: BKCHUS33
Domestic Swift #: (RTN/ABA): 026003269



**EXHIBIT B**



CELTIC
COMMERCIAL
FINANCE

4 Park Plaza, Suite 500       TEL: 949.263.3880       info@celticleasing.com
Irvine, CA 92614             FAX: 949.263.1331       www.celticleasing.com

June 8, 2018

**Enercorp Services LLC**
10850 Luna Road
Dallas, TX 75220

RE: Lease Schedule No. 3879A01 (the "Schedule"), to Master Lease No. CML-3879A (the "Lease"), by
and between Celtic Commercial Finance, a division of MB Equipment Finance, LLC, as Lessor, and
**Enercorp Services LLC**, as Lessee, and all duly executed supplemental documentation relating to said
Lease and Schedule (collectively, the Lease, the Schedule, and all related supplemental documentation,
is herein referred to as the "Transaction").

Gentlemen and/or Ladies:

Notwithstanding anything to the contrary contained in the above referenced Transaction, and to the limited
extent hereof, this Letter Agreement amends and supersedes said Transaction and is hereby incorporated by
reference therein.

Lessee and Lessor hereby acknowledge that the installation of Equipment subject to this Schedule has
proceeded beyond the originally contemplated completion date of mid May of 2018, and at Lessee's previous
request, Lessor has kept the Transaction open to allow for the completion of the Equipment installation. At
this time, it is Lessor's understanding that all items of Equipment have been installed, and as such, the
following is hereby acknowledged: (a) Lessee has requested and Lessor has agreed to increase the "Equipment
cost to Lessor not to exceed" from $500,000.00 to $527,125.00; (b) Equipment Items 1.-? as set forth on said
Schedule consists of Items 1.-3. as described on the applicable Acceptance Certificate(s); (c) Lessee and
Lessor hereby mutually agree that the Final Commencement Date of said Transaction is 06/08/18; and (d) there
has been an increase in market rates prior to final funding of said Equipment by Lessor or its assignee. As a
cumulative result of all of the above, the Transaction is hereby revised as follows:

| Lease Schedule No. 3879A01 | | AS CURRENTLY STATED | AS REVISED HEREIN |
|---|---|---|---|
| A. Equipment cost to Lessor not to exceed | : $ | 500,000.00 | $ 527,125.00 |
| B. MONTHLY RENT | : $ | 9,500.00 | $ 10,089.00 |

In all other respects, the terms of the Transaction as currently set forth shall remain in full force and effect.
Please acknowledge your acceptance of this Letter Agreement by your authorized signature below and return
the original to Celtic Commercial Finance, a division of MB Equipment Finance, LLC.

Sincerely,
**Celtic Commercial Finance,**
a division of MB Equipment Finance, LLC

Sarah A. Powers
Vice President

SAP/kk

ACKNOWLEDGED AND AGREED:
**Enercorp Services LLC**

By

Name : Zachry Weir

Title : Member/Manager    Date: 6/11/18

L:\LACLOSE1

THE PERSONAL SIDE OF BUSINESS.

**EXHIBIT C**



# GUARANTY

of

**Master Lease No. CML-3879A**, dated <u>04/27/18</u>,

by and between

**Celtic Commercial Finance, a division of MB Equipment Finance, LLC,**

4 Park Plaza, Suite 300, Irvine, CA  92614, as **Lessor,**

and

**Enercorp Services LLC,** 10850 Luna Road, Dallas, TX 75220, as **Lessee,**

(the **"Lease"**)

including

any and all **Lease Schedules** now or in the future annexed to and made a part of the Lease

---

This Guaranty is executed by the undersigned guarantor(s) (individually and collectively, "Guarantor") in favor of Celtic Commercial Finance, a division of MB Equipment Finance, LLC, 4 Park Plaza, Suite 300, Irvine, CA  92614 ("Lessor" or "Celtic").

## RECITALS

A.  Celtic may, from time to time, enter into Lease Schedules pursuant to the above referenced Lease ("Lease") with **Enercorp Services LLC**, 10850 Luna Road, Dallas, TX 75220 ("Lessee" or "Obligor");

B.  In consideration of Celtic entering into such Lease Schedules with Obligor, Guarantor unconditionally guarantees to Celtic the payment and/or performance of all obligations of Obligor at any time owing to Celtic, under the Lease and Lease Schedules.

## AGREEMENT

With knowledge that Celtic will enter into Lease Schedules pursuant to the Lease with Obligor in reliance upon the existence of this Guaranty, Guarantor agrees with Celtic as follows:

1    <u>Guaranty</u>.    Guarantor unconditionally and irrevocably guarantees to Celtic, without off-set or deduction, the prompt payment and/or performance of all indebtedness, obligations and liabilities of Obligor at any time owing to Celtic, whether direct or indirect, matured or unmatured, primary or secondary or certain or contingent (individually, a "Guaranteed Obligation" and, collectively, the "Guaranteed Obligations").  This Guaranty is a guaranty of payment and not a guaranty of collection.  Guarantor guarantees to Celtic the punctual and faithful performance by Obligor of each and every Guaranteed Obligation.  If Obligor defaults in the payment or performance of any Guaranteed Obligation, if there exists any event or condition which, with notice and/or the passage of time would constitute a default under any Guaranteed obligation, or if there is a liquidation, bankruptcy, assignment for the benefit of creditors or similar proceeding affecting the status, existence, assets or obligations of Obligor, Guarantor shall pay directly to Celtic the sums which Obligor is obligated to pay to Celtic, whether by acceleration or otherwise, and promptly perform all other Guaranteed Obligations.  If Celtic is required to return any payment made to Celtic by or on behalf of Obligor, whether as a result of Obligor's bankruptcy, reorganization or otherwise, Guarantor acknowledges that this Guaranty covers all such amounts.

2.    <u>Continuing Nature of Guaranty</u>.  This Guaranty is a continuing guarantee and shall be effective as long as any obligations pursuant to the Lease or Lease Schedules remain, including any extensions, renewals, or modifications thereof, and shall apply without regard to the form or the amount of the Guaranteed Obligations in existence at any time.  Guarantor may prospectively revoke this Guaranty by sending written notice, by certified mail return receipt requested, to Celtic at the address for Celtic set forth above (the "Revocation Notice").  The revocation of this Guaranty shall not be effective with respect to any Guaranteed Obligation arising on or prior to the date occurring fifteen (15) days after Celtic's receipt of the Revocation Notice (the "Revocation Date") or arising at any time after the Revocation Date, if arising as the result of a commitment made by Celtic to Obligor on or prior to the Revocation Date.



GUARANTY. page 2

3.   Absolute Nature of Guaranty.  The obligations of Guarantor under this Guaranty are absolute and unconditional.  It is the obligation of Guarantor to discharge the Guaranteed Obligations when due.  Guarantor is not entering into this Guaranty in reliance on the value or the availability of any of the collateral securing payment of any Guaranteed Obligation (the "Collateral").  Guarantor acknowledges that Guarantor may be required to pay the Guaranteed Obligations, in full, without the assistance or support of any other party.  Guarantor has not been induced to enter into this Guaranty on the basis that any party other than Obligor will be liable to perform any Guaranteed Obligation or that Celtic will look to any other party to perform any Guaranteed Obligation.  If this Guaranty is signed by more than one party the obligations of such parties are joint and several and Celtic may release, or settle with, any of such parties without affecting the liability of any other party to this Guaranty.

4.   Waivers.  Guarantor waives:

(a)  Action Against Others.  Any right to require Celtic to:  institute suit or exhaust remedies against Obligor or any other party liable for any Guaranteed Obligation; enforce Celtic's rights in any of the Collateral or other security which is at any time given to secure any Guaranteed Obligation; enforce Celtic's rights against any other guarantor of any Guaranteed Obligation; join Obligor or any other party liable for any Guaranteed Obligation in any action seeking to enforce this Guaranty; or exhaust any other remedies available to Celtic or resort to any other means of obtaining payment or performance of any Guaranteed Obligation.

(b)  Notices.  Notice of the amount of credit extended by Celtic to Obligor at any time, whether primary or secondary; notice of the modification or extension of any Guaranteed Obligation; notice of the transfer or disposition by Celtic of any Guaranteed obligation; notice of the repossession, sale or other disposition of any of the Collateral; notice of the acceptance of this Guaranty by Celtic; demand and presentation for payment upon Obligor or any other party liable for any Guaranteed Obligation; protest, notice of protest and diligence of bringing suit against Obligor or any other party; and any other action or inaction on the part of Celtic in connection with this Guaranty or any Guaranteed Obligation.

5.   Representations and Warranties.  Guarantor represents and warrants to Celtic that:

(a)  Benefit.  Guarantor has received, or will receive, direct or indirect benefit from the creation of the Guaranteed Obligations.

(b)  No Representation by Celtic.  Neither Celtic nor any other party has made any representation, warranty or statement to Guarantor in order to induce Guarantor to execute this Guaranty.

(c)  Financial Condition.  As of the date hereof, and after giving effect to this Guaranty and contingent obligations contained herein, Guarantor is solvent and has assets which, when fairly valued, exceed its liabilities.

6.   **Governing Law; Miscellaneous.  This Guaranty shall be governed by, and construed in accordance with, the laws of the State of California, without reference to applicable conflict of law principles.  Guarantor consents to the jurisdiction and venue of California courts in connection with Celtic's enforcement of any of Guarantor's obligations under the Guaranty.**  This Guaranty shall not be deemed to create any right in any party except as provided herein and shall inure to the benefit of, and be binding upon, the successors and assigns of Guarantor and Celtic.  Guarantor agrees that Celtic may, without the consent of, or notice to, Guarantor, assign all or any portion of its rights hereunder to any other party to which any Guaranteed Obligation is transferred, assigned or negotiated.  Guarantor promises to pay all reasonable expenses of Celtic, including attorneys' fees, incurred in enforcing this Guaranty.

The undersigned, pursuant to due corporate or partnership authority, as appropriate, has or have caused this Guaranty to be executed as of the date set forth below each signature.



GUARANTY, page 3

**INDIVIDUAL GUARANTOR(S):**                    **WITNESS(ES):**

Signature: _Zachry Weir_                        Signature: _Richard Ashton_
Name: Zachry Weir                               Name: Richard Ashton
Date: 4/26/18                                   Social Security#: 465 37 9282
Social Security#: 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                   Home Address: 2604 Oak Cliff
Home Address: 2504 Syntree Ln                                 Arlyn Tx 76012
             Plano, TX 75025

L: GCL000

Project Location:

Name & Address of Person(s) making this Statement:
Zachry Weir, 2504 Suntree Lane, Plano, TX 75025

| Date Prepared: | 12/31/2017 | Date of Statement: | 11/30/2017 |

| Assets | Balance | Total | Liabilities and Net Worth | |
|---|---|---|---|---|
| Cash on hand in banks | | | Accounts Payable | $ 1,500 |
| Name of depository | | | Notes Payable | $ |
| Green Bank | | | Debts payable in less than one year (secured by mortgages on land and buildings) | $ |
| Depository and Account No. - Restricted | $ | | | |
| Depository and Account No. - Unrestricted | $ | 1,672,500 | Debts payable in less than one year (secured by chattel mortgages or other liens on assets) | $ |
| Accounts Receivable | $ | | Other current liabilities: (describe) | $ |
| Less: Doubtful Accounts | $ | 0 | | |
| Notes Receivable | $ | | Total Current Liabilities: | $ 1,500 |
| Less: Doubtful Notes | $ | 0 | Debts payable in more than one year (secured by mortgages on land and buildings) | $ 308,400 |
| Stocks and Bonds - Market Value (Schedule A - reverse side) | $ | | | |
| Other Current Assets: (describe) | $ | | Debts payable in more than one year (secured by chattel mortgages or other liens on assets) | $ |
| Total Current Assets | $ | 1,672,500 | Other liabilities (describe) | $ |
| Real Property — at net * (Schedule B — reverse side) | $ | 1,416,366 | | |
| Machinery Equipment and Fixtures — at net | $ | 416,738 | Total Liabilities | $ 309,900 |
| Life Insurance (Cash value less loans) | $ | | | |
| Other Assets (describe) | | | | |
| Equity Enercorp Services | 15,872,522 | $ 15,872,522 | Net Worth | $ 19,068,206 |
| Total Assets | $ | 19,378,106 | Total Liabilities and Net Worth | $ 19,378,106 |

**EXHIBIT D**



## MISDIRECTED INVOICE/ASSIGNMENT OF INVOICE/BILL OF SALE
relating to
all Lease Schedules now or hereafter attached to and made a part of
Master Lease No. CML-3879A,
by and between
Celtic Commercial Finance, a division of MB Equipment Finance, LLC, as Lessor,
and
**Enercorp Services LLC**, as Lessee (the "Lease")

This is to acknowledge that for all items of equipment now or hereafter subject to the above-referenced Lease Schedules (the "Equipment"), it has been and is, since prior to delivery of said Equipment, the intent of Lessee to lease the Equipment from Lessor. However, certain vendor(s) may inadvertently misdirect invoicing to Lessee for the Equipment, instead of to Lessor. Any such misdirected invoice(s) will be paid by Lessor (unless clearly documented otherwise). Lessee hereby acknowledges that it is not its intention to acquire any rights, title or interest in any of the Equipment (except for those rights and interests granted under the Lease), and, therefore, for valuable consideration, receipt of which is hereby acknowledged, Lessee hereby assigns, sets over, and transfers to Lessor any and all rights, title and interest it may inadvertently acquire to the Equipment as a result of any such misdirected invoice(s). Upon payment of these misdirected invoice(s) by Lessor (and/or its Assignee), Lessee acknowledges that Lessor shall acquire free and clear title to the subject Equipment.

READ, ACKNOWLEDGED AND AGREED TO:

| Lessee: | **Enercorp Services LLC** | Lessor: | **Celtic Commercial Finance,** a division of MB Equipment Finance, LLC |
| --- | --- | --- | --- |
| Signature: | | Signature: | |
| Name: | Zachry Weir | Name: | Sarah A. Powers |
| Title: | Member/Manager | Title: | Vice President |
| Date: | 4/26/18 | Date: | 04/27/18 |

L: MIBROAD00

# FUNDING TRANSMITTAL

RE: **Enercorp Services LLC**
    Celtic Master Lease No. CML-3879A                    Lease Schedule No. 3879A01

| | | |
|---|---|---|
| 1. Base Term in months | : | 60.00 |
| 2. Base Term monthly rentals to be retained by Celtic Commercial Finance (first month [07/01/18-07/31/18] and last month) | : | ( 2.00) |
| 3. Number of months assigned to Finwise Bank ("ASSIGNEE") | : | 58.00 |
| 4. Monthly rental amount (exempt from sales tax per Lessee--applicable documentation provided by Lessee is enclosed) to be billed by Assignee | : | $ 10,089.00 |
| 5. Final Commencement Date | : | 06/08/18 |
| 6. Base Term commencement date | : | 07/01/18 |
| 7. Base Term termination date | : | 06/30/23 |
| 8. Date first payment due ASSIGNEE | : | 08/01/18 |
| 9. Date final payment due ASSIGNEE | : | 05/01/23 |
| 10. Expected date of funding by ASSIGNEE | : | 07/09/18 |
| 11. Discount rate | : | 7.00% |
| 12. Present value as of the expected date of funding by ASSIGNEE of the monthly rental payments assigned | : | $ 495,910.51 |
| 13. Anticipated funding amount from ASSIGNEE if on expected date | : | $ 495,910.51 |
| 14. Daily interest settlement to be subtracted/added for each day funding is prior/subsequent to expected date of funding | : | $ 96.43 |

**Celtic Commercial Finance,**
a division of MB Equipment Finance, LLC

By : _K. Knust_

Name : _Kristina Knust_

Title : _Funding Administrator_  Date: _06/28/18_

L:\FTFWB000



CELTIC
COMMERCIAL
FINANCE®

4 Park Plaza, Suite 300      TEL: 949.263.3880          info@celticleasing.com
Irvine, CA 92614             FAX: 949.263.1331           www.celticleasing.com

## CERTIFICATION

I, Sarah A. Powers, being Vice President of Celtic Commercial Finance, a division of MB Equipment Finance, LLC, hereby certify that the attached Master Lease No. CML-3879A, dated 04/27/18, entered into between Celtic Commercial Finance, a division of MB Equipment Finance, LLC, as Lessor, and **Enercorp Services LLC**, as Lessee ("Master Lease"), is a true and complete copy of the sole original thereof, and that the related: Addendum "1"; Limited Liability Company Certificate; Guaranty executed by Zachry Weir, individually; Landlord/Lienholder Waiver Agreement; Letter Agreement acknowledging property ownership; and Misdirected Invoice/Assignment of Invoice/Bill of Sale, are true and complete copies of the originals thereof, all originals of which are in the possession of the undersigned and will be retained by the undersigned for exclusive use and benefit of the owners, and their assignees, of all Supplements and/or Schedules entered into pursuant to said Master Lease. This Master Lease and any Lease Schedules ("Schedule") executed pursuant hereto shall be executed with only one "ORIGINAL" with all other copies being solely xerographic copies thereof. If Lessor grants a security interest in all or part of a Schedule, the Schedule covered thereby and/or sums payable thereunder, only the "ORIGINAL" Schedule executed by the Lessor and the Lessee shall be effective to transfer Lessor's rights therein.

**Celtic Commercial Finance,**
a division of MB Equipment Finance, LLC

By      : _Sman Purss_

Name : _Sarah A. Powers_

Title  : _Vice President_

Date  : _June 27, 2018_

THE PERSONAL SIDE OF BUSINESS™

**EXHIBIT E**



**VIA CERTIFIED MAIL, REGULAR MAIL & EMAIL**

October 16, 2019

Enercorp Services LLC                          Enercorp Services LLC
10850 Luna Road                                5117 FM 2931
Dallas, TX 75220                               Aubrey, TX 76227


Zachry Weir                                    Enercorp Services LLC
2504 Suntree Lane                              Zachry Weir
Plano, TX 75025                                10721 Luna Road
                                               Dallas, TX 75220


RE:   **Enercorp Services LLC (the "Lessee")** / Account No. 17031931

      **Master Lease Agreement Number CML-3879A made by Lessee to Celtic Commercial Finance ("Celtic") dated April 27, 2018 in the original amount of $500,000.00 ("First Lease"), which First Lease was amended and increased to $527,125.00 per Lease Schedule No. 3879A01 dated June 8, 2018 and signed June 11, 2018 (the "Amended Lease", which along with the First Lease are hereinafter collectively referred to as the "Master Lease"), which Master Lease, among other things, grants Celtic a security interest and lien in specific equipment manufactured by LiuGong Construction Machinery N.A. LLC:**

        1)  **2014 TD-15M Extra LGP Dressta Crawler Dozer; Model QSC 8.3**
            **S/N: LDM4950014P033826**
        2)  **2016 CLG936E Hydraulic Excavator/Cummins4F/1; Model QSL9**
            **S/N: CLG0936EKGE050165**
        3)  **2012 TD-25M EXTRA Dressta Crawler Dozer; Model QSX15**
            **S/N: LDM7850001P075203**

      **Unconditional Guaranty of Zachry Weir dated April 27, 2018 (the "Guaranty" or "Guarantor")**

Dear Mr. Zachry Weir:

As you are aware, Celtic assigned all its rights under the Master Lease and Guaranty to FinWise Bank ("FinWise") per Assignment of Lease Receivable on June 28, 2018.



Zachry Weir
Enercorp Services LLC
October 16, 2019
Page 2

Notice is hereby given that the Lessee is in default with the terms of the Master Lease for failing to remit the required monthly rent payments due August 1, 2019 and each month thereafter.

Accordingly, FinWise hereby terminates and accelerates the Master Lease and declares the entire unpaid balance of the aggregate rent plus the Fair Market Value of the Equipment to be immediately due and payable. Demand is hereby made upon the Lessee and Guarantor to remit payment to FinWise in the amount of **$924,979.00**, which consists of the unpaid balance of the aggregate rent, plus the Fair Market Value of the Equipment, and repossession close fees, which payment must be made by Monday October 28, 2019.

You are hereby reminded that, under the terms of the Master Lease, you are liable for all reasonable attorney's fees and costs FinWise incurs in the collection of enforcement of its rights under the Master Lease and Guaranty.

Nothing contained herein shall modify, amend, or waive any term or condition of the lease documents, or at law, all of which are specifically reserved.

Sincerely,

Timothy Brosnan
Vice President, Portfolio Manager

**EXHIBIT F**

**18-0012625196**

**04/09/2018 05:00 PM**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**FILED**

TEXAS
SECRETARY OF STATE

**SOS**

**806585310006**

A. NAME & PHONE OF CONTACT AT FILER (optional)
CSC   1-800-858-5294

B. E-MAIL CONTACT AT FILER (optional)
SPRFiling@cscglobal.com

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

1449 65458
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

RECEIVED
APR 9 2018
CLK T³
Filed In: Texas
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME Enercorp Services LLC | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 10850 Luna Road | CITY Dallas | STATE TX  POSTAL CODE 75220 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE  POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME Finwise Bank | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 820 East 9400 South | CITY Sandy | STATE UT  POSTAL CODE 84094 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:
Leased property as set forth on Exhibit A attached hereto and made a part hereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA: TX SOS (REF:CML-3879A01) - KK

1449 65458

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**

## Exhibit "A"
to
## UNIFORM COMMERCIAL CODE - FINANCING STATEMENT - FORM UCC-1

Debtor Corporate Address    :    10850 Luna Road, Dallas, TX 75220

Property Location           :    Same as above (and any subsequent locations)

Description of Property Covered:

| ITEM | QTY | SERIAL NO. | DESCRIPTION |
|------|-----|-----------|-------------|

All equipment and other personal property and all modifications and additions thereto and replacements and substitutions therefor, in whole or in part, now or hereafter covered by that certain Lease Schedule No. 3879A01, to Master Lease No. CML-3879A, between Celtic Commercial Finance, a division of MB Equipment Finance, LLC, as Lessor, and **Enercorp Services LLC**, as Lessee.  Said equipment is expected to include, but is not limited to, the items listed below, as follows:

VENDOR: to be determined

1.-?    various    Items of Equipment expected to include:  Miscellaneous excavators, dozers, rolling stock, skid steers and related equipment, and/or other related and/or accessory property. Items 1. and on shall be enumerated and described in further detail, including location and vendor name, at a later date on the related applicable Acceptance Certificate(s).

Including all attachments and accessories thereto, and all proceeds thereof, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, contract rights and general intangibles.

This filing is for precautionary purposes in connection with a leasing transaction and is not to be construed as indicating that the transaction is other than a true lease.

**UCC FINANCING STATEMENT AMENDMENT**

FOLLOW INSTRUCTIONS

**18-00204763**

**06/08/2018 05:00 PM**

**FILED**

TEXAS
SECRETARY OF STATE

SOS

818660880008

A. NAME & PHONE OF CONTACT AT FILER (optional)
CSC    1-800-858-5294

B. E-MAIL CONTACT AT FILER (optional)
SPRFiling@cscglobal.com

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

1475 91332
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

RECEIVED
JUN 8 2018
CLK TI

Filed In: Texas
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|
| 18-0012625196 04/09/2018 | (or recorded) in the REAL ESTATE RECORDS<br>Filer: **attach** Amendment Addendum (Form UCC3Ad) **and** provide Debtor's name in item 13 |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination
Statement

3. ☐ **ASSIGNMENT** (full or partial):  Provide name of Assignee in item 7a or 7b, **and** address of Assignee in item 7c **and** name of Assignor in item 9
For partial assignment, complete items 7 and 9 **and** also indicate affected collateral in item 8

4. ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is
continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check **one** of these two boxes:                                    AND  Check **one** of these three boxes to:

This Change affects ☐ Debtor **or** ☐ Secured Party of record          ☐ CHANGE name and/or address: Complete     ☐ ADD name: Complete item     ☐ DELETE name: Give record name
                                                                         item 6a or 6b; **and** item 7a or 7b **and** item 7c      7a or 7b, **and** item 7c          to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only **one** name (6a or 6b)

| 6a. ORGANIZATION'S NAME Enercorp Services LLC | | | |
|---|---|---|---|

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

7. **CHANGED OR ADDED INFORMATION:**  Complete for Assignment or Party Information Change - provide only **one** name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| | | | |

| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
|---|---|---|---|

| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |
|---|---|---|---|

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☑ **COLLATERAL CHANGE:**  **Also** check **one** of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☑ RESTATE covered collateral  ☐ ASSIGN collateral

Indicate collateral:

To Amend the original filing to include detailed equipment description and serial numbers as applicable as set forth on
attached Exhibit A attached hereto and made a part hereof.

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:**  Provide only **one** name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐  and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME Finwise Bank | | | |
|---|---|---|---|

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

10. OPTIONAL FILER REFERENCE DATA: Debtor:Enercorp Services LLC-TX SOS (REF:CML-3879A01) - KK

1475 91332

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# Exhibit "A"

to

## UNIFORM COMMERCIAL CODE - FINANCING STATEMENT - FORM UCC-3

Debtor Corporate Address   :   10850 Luna Road, Dallas, TX 75220

Property Location   :   5117 FM 2931, Aubrey, TX 76227

Description of Property Covered:

| ITEM | QTY | SERIAL NO. | DESCRIPTION |
|------|-----|-----------|-------------|

All equipment and other personal property and all modifications and additions thereto and replacements and substitutions therefor, in whole or in part, now or hereafter covered by that certain Lease Schedule No. 3879A01, to Master Lease No. CML-3879A, between Celtic Commercial Finance, a division of MB Equipment Finance, LLC, as Lessor, and **Enercorp Services LLC**, as Lessee. Said equipment is expected to include, but is not limited to, the items listed below, as follows:

| Item # | Vendor | Invoice # | Address | City | County | State | Zip |
|--------|--------|-----------|---------|------|--------|-------|-----|
| 1. | LiuGong Construction Machinery N.A. LLC | 8514006536 | 5117 FM 2931 | Aubrey | Denton | TX | 76227 |
| 2. | LiuGong Construction Machinery N.A. LLC | 8514006532 | 5117 FM 2931 | Aubrey | Denton | TX | 76227 |
| 3. | LiuGong Construction Machinery N.A. LLC | 8514006535 | 5117 FM 2931 | Aubrey | Denton | TX | 76227 |

Including all attachments and accessories thereto, and all proceeds thereof, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, contract rights and general intangibles.

This filing is for precautionary purposes in connection with a leasing transaction and is not to be construed as indicating that the transaction is other than a true lease.